Argued and submitted January 3, affirmed July 20, 2011

ELK CREEK MANAGEMENT COMPANY,
*Plaintiff-Respondent,*

*v.*

Harold GILBERT
and Melissa Strittmatter,
*Defendants-Appellants.*

Malheur County Circuit Court
M09072786; A143348

260 P3d 686

Edward Johnson argued the cause for appellants. With him on the briefs was Mandy A. Weeks.

Max S. Taggart, II, argued the cause and filed the brief for respondent.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Edmonds, Senior Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

This is an appeal from a landlord's action for forcible entry and detainer. Defendants are tenants of plaintiff, Elk Creek Management Company. At trial, defendants argued that plaintiff's no-cause eviction notice was unlawful retaliation for complaints that defendants had made about the electrical system on the rental property. The trial court disagreed and found in favor of plaintiff. Because we conclude that the trial court did not misinterpret ORS 90.385, the anti-retaliation statute within the Oregon Residential Landlord Tenant Act (ORLTA), we affirm.

We take the facts from the trial court's findings and from unrebutted testimony at trial, except as noted. Defendants rented a house owned by DeBoer and managed by plaintiff Elk Creek. Sometime before mid-May 2009—the exact date is undetermined—defendant Gilbert, in a telephone call to DeBoer, complained about the electrical system on the property. Subsequently, DeBoer and the manager's employee, Gluch, did a "walk-through" of the house. The walk-through occurred on May 19, 2009. At that time, defendant Strittmatter complained again about the electrical system.[1] A month later, DeBoer and Gluch did a follow-up walk-through with a licensed electrician. At that time, the electrician told DeBoer that the electrical wiring needed extensive work. The afternoon following the walk-through, defendants received a phone call from Gluch informing them that DeBoer had decided to end the month-to-month lease. The following day, defendants received a 30-day no-cause eviction notice accompanied by a note from Gluch that read, "I am sorry that I have to give you the thirty days notice.

---

[1] The questions of who complained to whom, and when, are somewhat muddled. Strittmatter testified that she had complained about the electrical system to Gluch and DeBoer at the time of the May walk-through. Gilbert testified that he had complained to DeBoer at some time before the walk-through. Gluch testified that she never received a written complaint and, in response to a later question from the court, that defendants did not complain. DeBoer did not testify. The trial court found that, "[p]rior to the termination notice, Gilbert had made some sort of general complaint(s) to DeBoer about the electrical system on the property." The court also found that the testimony of all the witnesses was credible. We resolve the seemingly contradictory nature of these various statements and findings by concluding that, when Gluch responded to the court's question about whether defendants had complained about the electrical system, she was referring back to her earlier testimony regarding written complaints.

[DeBoer] has several repairs including updating the electrical. If there is anything I can do please let me know."

Defendants did not leave the premises after the 30 days had expired, and plaintiff filed this eviction action. In their answer, defendants alleged that the 30-day no-cause notice was given because of their complaints and was, therefore, retaliatory under ORS 90.385, quoted below, and therefore impermissible. The case was tried before the court. Gluch testified that she did not know why DeBoer had decided to terminate the lease. DeBoer did not attend the trial.

The trial court concluded that the termination was not for retaliatory reasons. Specifically, the court concluded:

"The concept of *retaliation (lex talionis)* has ancient foundations and in common language is easily understood in metaphors such as 'an eye for an eye' or 'a tooth for a tooth.' The essence of the concept is that when one suffers a real or perceived wrong, a like injury will be inflicted upon the one who did the initial real or perceived harm. [Defendants] inflicted no wrong upon DeBoer when they noted some problems involving the electrical system. Nor did DeBoer attempt to respond in a wrongful manner by attempting to harm [defendants] by terminating their tenancy when such complaint(s) were made. In fact, it appears that during the tenancy DeBoer has spent considerable sums attempting to maintain the premises in a habitable condition during the tenancy, and took no action against [defendants] when they were previously in default on their rent. In fact, the conduct and circumstances involved in this case on the part of both the defendants and plaintiff are rather innocuous in this Court's opinion. The facts of this case do not in this Court's opinion establish that the tenancy termination constituted *retaliation* by DeBoer against [defendants] because they expressed at some point prior to the termination that they had some electrical concerns regarding the premises."

(Emphasis in original; footnotes omitted.) Consequently, the trial court found in favor of plaintiff, and this appeal followed.

ORS 90.385 provides, in part:

"(1)  Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services, by serving a notice to terminate the tenancy or by bringing or threatening to bring an action for possession after:

"* * * * *

"(b)  The tenant has made any complaint to the landlord that is in good faith and related to the tenancy;

"* * * * *

"(3)  If the landlord acts in violation of subsection (1) of this section the tenant is entitled to the remedies provided in ORS 90.375 and has a defense in any retaliatory action against the tenant for possession."

In their brief, defendants focus on the meaning of the word "retaliate." They assert, "The error here is not with the court's findings of fact regarding the absence of bad motives, but rather with the court's legal conclusion that some type of bad motive is necessary on the part of both a complaining tenant and a responding landlord." The correct interpretation, they maintain, is a "but for" test. However, in describing the "but for" test, they argue, as they did at trial, that, under a correct interpretation of ORS 90.385, a tenant establishes a rebuttable presumption of retaliation by showing the temporal proximity of the complaint and the eviction, thereby shifting the burden to the landlord, who can rebut the presumption by demonstrating a nonretaliatory reason for the termination.[2] Plaintiff, in its brief, attempts to argue that, the trial court's finding of fact to the contrary notwithstanding, defendants never complained. In the alternative, plaintiff argues that we should apply the dictionary definition of "retaliate," which requires an intention to do harm. At oral argument, defendants once again argued for the burden-shifting analysis and for a definition of "retaliate" that did

---

[2] In its letter opinion, the court notes that the parties raised this issue and that the court "requested and allowed time for a legal memorandum." No such memorandum is in the record on appeal, nor did the trial court expressly rule on the issue.

not require intent to harm, while plaintiff, somewhat surprisingly, conceded that, if there was a complaint, and if the termination would not have happened "but for" that complaint, then the termination *was* retaliatory. To further complicate the matter, the trial court found as fact that there *was* a but-for connection between the complaint and the termination ("From these facts it is a reasonable inference that Gilbert's conversation(s) with DeBoer as well as Gluch's concern with the [electrical] service mast caused DeBoer to want to do the initial walk-through * * *.") and also that there was *not* a but-for connection ("Defendants' contention appears to be that this Court should infer that tenancy termination would never had occurred but for Gilbert's complaints. Such an inference is not possible from the evidence in this case.").

Our task is to interpret the statute correctly regardless of the parties' interpretations and concessions. *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties."). We begin with defendants' argument that the statute allows the tenants to establish a presumption of landlord wrongdoing by demonstrating a temporal proximity between the complaint and the eviction notice. The text of ORS 90.385 itself is silent with respect to burdens and burden-shifting. The legislative history, however, demonstrates that defendants' position is untenable.

ORLTA was enacted in 1973 and derived, with some notable exceptions, from Uniform Residential Landlord Tenant Act (URLTA). *West v. French*, 51 Or App 143, 149-50, 625 P2d 144 (1981). The exceptions did not include the provision that became the antiretaliatory provision; that provision was brought from URLTA to ORLTA nearly verbatim. Section 5.101(b) of the 1972 URLTA provided, in part:

> "In an action by or against the tenant, evidence of a complaint within [1] year before the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of a proposed rent increase or diminution of services."

ORS 91.865(2) (1973), later renumbered ORS 90.385(2), provided:

> "In an action by or against the tenant, evidence of a complaint within six months before the alleged act of retaliation creates a disputable presumption that the landlord's conduct was in retaliation. The presumption does not arise if the tenant made the complaint after notice of a proposed rent increase or diminution of services."

In 1979, however, the legislature enacted some amendments to ORLTA, including to the antiretaliatory provision. Or Laws 1979, ch 643, § 1. As first introduced, the bill made only insignificant changes to the "presumption of retaliation" section; its primary change to the existing retaliation statute was to add to the acts of a tenant that could not be retaliated against, for example complaining to the landlord of failure to comply with certain notice requirements. House Bill (HB) 2485 (1979) (as introduced); *see also* Exhibit J, House Committee on Judiciary, HB 2485, June 6, 1979. At the first hearing on the bill before the House Committee on the Judiciary, one witness, the secretary of a landlords' group, referred obliquely (and negatively) to the existing presumption of retaliation. In response, Representative Frohnmayer stated that "this is something that the committee would explore." Tape Recording, House Committee on Judiciary, HB 2485, Apr 6, 1979, Tape 39, Side 2 (statement of Chairman Dave Frohnmayer).

Between that hearing and the next, "various interest groups got together and came up with some proposed amendments." Tape Recording, House Committee on Judiciary, HB 2485, June 6, 1979, Tape 82, Side 2 (statement of Chairman Mark Gardner). Those amendments did not alter the presumption of retaliation section. However, during the hearing itself, a witness representing the Oregon Association of Realtors expressed some reservations about the provision, and a discussion ensued. *Id.* (statement of Jack Munro, Oregon Association of Realtors). Chairman Gardner expressed his opinion that he had "never been a great fan" of rebuttable presumptions and would favor eliminating the provision entirely. *Id.* (statement of Chairman Gardner). At that point, a witness representing Legal Aid told the committee that, in his opinion and experience, the existence of the

presumption had no significant effect on the outcome of cases. He therefore would not support eliminating the provision, but that he would "really not care." *Id.* (statement of Gary Roberts, Legal Aid). Chairman Gardner then moved to delete the presumption, explaining that "it should basically be a question of whether or not there is sufficient evidence and the burden should be upon the person who alleged the retaliation." *Id.* (statement of Chairman Gardner). The witness from Legal Aid then repeated that, in his opinion, the presumption had no significant effect in practice. The amendment eliminating the provision then passed. *Id.* Representative Frohnmayer remarked that he voted to eliminate it only because the Legal Aid witness testified that he did not think that the provision was serving any real purpose. Its elimination was not discussed in the Senate hearings, and the amended bill was enacted without it.

Legislative history is not always illuminating, but we can say with a high degree of confidence that *this* legislative history, in the absence of statutory text on the issue, demonstrates that, under the current version of ORS 90.385, a tenant cannot rely on chronology—a complaint soon followed by a notice of eviction—to establish a presumption of retaliation that the landlord must then rebut. Thus, in order to prevail in this case, defendants have to affirmatively establish retaliation, and the outcome here depends on what that term means.

We turn, then, to defendants' contention that, under ORS 90.385, retaliation does not necessarily imply an intent to "get even." Rather, defendants contend, quoting an Oregon State Bar Continuing Legal Education volume, " '[T]he critical inquiry is whether the landlord would have evicted had the complaint (or other protected act) not occurred—not whether the landlord was angry * * *.' " *Real Estate Disputes* § 3.36 (OSB CLE 1993).

We cannot agree. When construing a statute, we give words of common usage their plain and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). To "retaliate" means to "repay or requite in kind (as an injury)," "to put or inflict in return." *Webster's Third New Int'l Dictionary* 1938 (unabridged ed

2002). Defendants have not proposed that "retaliate" is a term of legal art, nor have they cited any usage or definition of the term that does *not* involve an intent to compensate for harm by inflicting harm in return. The concept of retaliation as the term is used in ORS 90.385 involves an intention on the part of the landlord to cause some sort of disadvantage to the tenant, motivated by an injury (or perceived injury) that the tenant has caused the landlord.

Defendants nonetheless contend that the overall context and purpose of ORLTA require a broader meaning for "retaliate":

> "The Oregon Supreme Court has recognized that 'a means to enforce the obligations of landlords to maintain premises in habitable condition while allowing tenants to remain upon such premises' was one of the intended purposes of the ORLTA. *L & M Investment Co. v. Morrison,* 286 Or 397, 407, 594 P2d 1238 (1979).
>
> "* * * * *
>
> "Allowing tenants to complain about conditions without being threatened with eviction or evicted is a critical aspect to achieving the legislative purpose behind the habitability requirement in ORS 90.320. The trial court's incorrect requirement of an 'intent to harm' in order for a tenant to prove retaliation thwarts this purpose."

We agree that requiring a retaliatory motive might decrease a tenant's confidence that his or her complaint will not lead to eviction. A tenant may realize that an opportunistic landlord could, with no intent to inflict a retributory injury whatsoever, evict the tenant because the landlord could not afford to make the repairs or decided to take the property off the market completely. Such a landlord has not violated ORS 90.385 simply because the eviction follows on the heels of a tenant's complaint, at least as the statute is now written—the product, as the legislative history cited above demonstrates, of political compromise between interests representing landlords and tenants.

The question of a landlord's motive is one of fact. Here, the trial court found as fact that plaintiff did not "attempt to respond [to complaints] in a wrongful manner by attempting to harm [defendants]." Defendants concede that

"the error here is not with the court's findings of fact regarding the absence of bad motives[.]" Thus, plaintiff did not "retaliate" against defendants.

Affirmed.