On appellant's petition for reconsideration filed August 3, 2011, reconsideration allowed; former opinion (244 Or App 382, 260 P3d 686) modified and adhered to as modified January 5, petition for review allowed June 14, 2012 (352 Or 107)

ELK CREEK MANAGEMENT COMPANY,
*Plaintiff-Respondent,*

*v.*

Harold GILBERT
and Melissa Strittmatter,
*Defendants-Appellants.*

Malheur County Circuit Court
M09072786; A143348

270 P3d 362

Edward Johnson and Oregon Law Center for petition.

Before Wollheim, Presiding Judge, and Ortega, Judge, and Nakamoto, Judge.

WOLLHEIM, P. J.

## WOLLHEIM, P. J.

Defendants seek reconsideration of our decision in *Elk Creek Management Co. v. Gilbert*, 244 Or App 382, 260 P3d 686 (2011). In this forcible entry and detainer (FED) action, defendants appealed a judgment for plaintiff, the property owner's management company. Defendants assigned error to the trial court's interpretation of ORS 90.385, the anti-retaliation statute. We concluded that the trial court correctly interpreted ORS 90.385, and affirmed.[1] In their motion for reconsideration, defendants now argue that (1) we incorrectly imported an "intent to harm" requirement into ORS 90.385, and (2) the opinion contains *dicta* that will have sweeping, dangerous, and presumably unintended consequences for tenants.[2] We grant the petition for reconsideration and affirm the prior opinion as modified.

As described in our original decision, we take the facts from the trial court's findings and from unrebutted testimony, except as noted:

"Defendants rented a house owned by DeBoer and managed by plaintiff Elk Creek. Sometime before mid-May 2009—the exact date is undetermined—defendant Gilbert, in a telephone call to DeBoer, complained about the electrical system on the property. Subsequently, DeBoer and the manager's employee, Gluch, did a 'walk-through' of the house. The walk-through occurred on May 19, 2009. At that time, defendant Strittmatter complained again about the electrical system. A month later, DeBoer and Gluch did a follow-up walk-through with a licensed electrician. At that time, the electrician told DeBoer that the electrical wiring needed extensive work. The afternoon following the walk-through, defendants received a phone call from Gluch informing them that DeBoer had decided to end the month-to-month lease. The following day, defendants received a 30-day no-cause eviction notice accompanied by a note from Gluch that read, 'I am sorry that I have to give you the thirty days notice. [DeBoer] has several repairs including

---

[1] In 2011, the legislature amended ORS 90.385. Or Laws 2011, ch 42. Except as noted in footnote 3, the legislature did not amend the portions of the statute that we cite in this opinion. The opinion refers to the 1999 version of the law in effect when the FED was filed.

[2] Elk Creek Management did not file a response to defendants' petition for reconsideration.

updating the electrical. If there is anything I can do please let me know.'

"Defendants did not leave the premises after the 30 days had expired, and plaintiff filed this eviction action. In their answer, defendants alleged that the 30-day no-cause notice was given because of their complaints and was, therefore, retaliatory under ORS 90.385, quoted below, and therefore impermissible. The case was tried before the court. Gluch testified that she did not know why DeBoer had decided to terminate the lease. DeBoer did not attend the trial.

"The trial court concluded that the termination was not for retaliatory reasons. Specifically, the court concluded:

" 'The concept of *retaliation* (*lex talionis*) has ancient foundations and in common language is easily understood in metaphors such as "an eye for an eye" or "a tooth for a tooth." The essence of the concept is that when one suffers a real or perceived wrong, a like injury will be inflicted upon the one who did the initial real or perceived harm. [Defendants] inflicted no wrong upon DeBoer when they noted some problems involving the electrical system. Nor did DeBoer attempt to respond in a wrongful manner by attempting to harm [defendants] by terminating their tenancy when such complaint(s) were made. In fact, it appears that during the tenancy DeBoer has spent considerable sums attempting to maintain the premises in a habitable condition during the tenancy, and took no action against [defendants] when they were previously in default on their rent. In fact, the conduct and circumstances involved in this case on the part of both the defendants and plaintiff are rather innocuous in this Court's opinion. The facts of this case do not in this Court's opinion establish that the tenancy termination constituted *retaliation* by DeBoer against [defendants] because they expressed at some point prior to the termination that they had some electrical concerns regarding the premises.'

"(Emphasis in original; footnotes omitted.) Consequently, the trial court found in favor of plaintiff, and this appeal followed.

"ORS 90.385 provides, in part:

" '(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services, by serving a notice to terminate the tenancy or by bringing or threatening to bring an action for possession after:

" '\* \* \* \* \*

" '(b) The tenant has made any complaint to the landlord that is in good faith and related to the tenancy;

" '\* \* \* \* \*

" '(3) If the landlord acts in violation of subsection (1) of this section the tenant is entitled to the remedies provided in ORS 90.375 and has a defense in any retaliatory action against the tenant for possession.'

"In their brief, defendants focus on the meaning of the word 'retaliate.' They assert, 'The error here is not with the court's findings of fact regarding the absence of bad motives, but rather with the court's legal conclusion that some type of bad motive is necessary on the part of both a complaining tenant and a responding landlord.' The correct interpretation, they maintain, is a 'but for' test. However, in describing the 'but for' test, they argue, as they did at trial, that, under a correct interpretation of ORS 90.385, a tenant establishes a rebuttable presumption of retaliation by showing the temporal proximity of the complaint and the eviction, thereby shifting the burden to the landlord, who can rebut the presumption by demonstrating a nonretaliatory reason for the termination. Plaintiff, in its brief, attempts to argue that, the trial court's finding of fact to the contrary notwithstanding, defendants never complained. In the alternative, plaintiff argues that we should apply the dictionary definition of 'retaliate,' which requires an intention to do harm. At oral argument, defendants once again argued for the burden-shifting analysis and for a definition of 'retaliate' that did not require intent to harm, while plaintiff, somewhat surprisingly, conceded that, if there was a complaint, and if the termination would not have happened 'but for' that complaint, then the termination *was* retaliatory. To further complicate the matter, the trial court found as fact that there *was* a but for connection between the complaint and the termination ('From these facts it is a reasonable inference that Gilbert's conversation(s) with

DeBoer as well as Gluch's concern with the [electrical] service mast caused DeBoer to want to do the initial walk-through * * *.') and also that there was *not* a but for connection ('Defendants' contention appears to be that this Court should infer that tenancy termination would never had occurred but for Gilbert's complaints. Such an inference is not possible from the evidence in this case.')."

*Elk Creek Management Co.*, 244 Or App at 384-87 (emphasis in original; footnotes omitted).

On appeal, defendants argued that the trial court erred in ruling that, to be retaliatory, an eviction has to be driven by an intent to harm. In defendants' view, the court should have applied a "but for" test: Would the eviction have occurred if defendants had not complained? Once tenants established "but for" causation, defendants asserted, the burden shifted to the landlord to establish that the eviction was not in retaliation for the tenants' complaint. A "but for" standard, defendants argued, was more consistent with the legislative intent behind the Oregon Residential Landlord Tenant Act (ORLTA). *Id.* at 386-90.

After reviewing ORS 90.385, we disagreed with defendants. We found that the statute is silent regarding the definition of retaliation or burden-shifting. In addition, the legislative history showed that petitioner's position was untenable. We noted that there was anti-retaliation language in the original ORLTA, adopted in 1973, and that the original statute did create a rebuttable presumption: If the landlord filed an eviction notice within six months of the tenants' complaint, there was a rebuttable presumption that the landlord acted in retaliation for the complaint. However, a 1979 amendment eliminated a rebuttable presumption of retaliation. We concluded that, under the current version of ORS 90.385, a tenant can no longer rely on a chronology of a tenant's complaint followed by a landlord's notice of eviction to establish a presumption of retaliation that a landlord must rebut. Now, the tenant must affirmatively establish retaliation. Therefore, we set out to define the term "retaliation." *Id.* at 387-89.

We stated that, when construing a statute, we give words of common usage their plain and ordinary meaning.

According to *Webster's Third New Int'l Dictionary* 1938 (unabridged ed 2002), to "retaliate" means to "repay or requite in kind (as an injury)," or "to put or inflict in return." We noted that defendants neither suggested that retaliate was a term of legal art nor cited any usage or definition of the term that did not involve an intent to compensate for harm by inflicting harm in return. We were not persuaded by defendants' argument that the context and purpose of the ORLTA required a broader meaning for "retaliate." *Id.* at 389-90. We therefore concluded,

> "The concept of retaliation as the term is used in ORS 90.385 involves an intention on the part of the landlord to cause some sort of disadvantage to the tenant, motivated by an injury (or perceived injury) that the tenant has caused the landlord."

*Id.* at 390.

On reconsideration, defendants assert that we erred by addressing the effect of the 1979 amendment on the meaning of ORS 90.385(3) concerning creation of a tenant's defense based on a landlord's retaliation. Defendants argue that we should have focused on the proper legal standard to apply to achieve the legislature's purpose and intent in enacting ORS 90.385. However, as we stated in the opinion, our task was to interpret the statute correctly, regardless of the parties' interpretations and concessions. *Id.* at 387; *see Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997). Moreover, we addressed precisely the issue that defendants raised on appeal, namely "the [trial] court's legal conclusion that some type of bad motive is necessary on the part of both a complaining tenant and a responding landlord." *Elk Creek Management Co.*, 244 Or App at 386. We will not revisit that same issue of statutory construction on reconsideration.

Defendants also contend that our opinion contains *dicta* that may be seriously harmful to tenants. Defendants are concerned about two passages. The first is a sentence at 244 Or App at 389 that states that the 1979 legislative history is illuminating and that, "under the current version of ORS 90.385, *a tenant cannot rely on chronology*—a complaint soon followed by a notice of eviction—to establish a presumption of retaliation that the landlord must then rebut."

(Emphasis added.) Defendants are concerned that the language used to describe the legislative history means that chronology can never be used to establish retaliation.

The second passage defendants are concerned about is the paragraph at 244 Or App at 390, stating:

"We agree that requiring a retaliatory motive might decrease a tenant's confidence that his or her complaint will not lead to eviction. A tenant may realize that an opportunistic landlord could, with no intent to inflict a retributory injury whatsoever, evict the tenant because the landlord could not afford to make the repairs or decided to take the property off the market completely. Such a landlord has not violated ORS 90.385 simply because the eviction follows on the heels of a tenant's complaint, at least as the statute is now written—the product, as the legislative history cited above demonstrates, of political compromise between interests representing landlords and tenants."

*Dictum* is not binding on the court, and we do not apply *dictum* that provides no useful guidance. *See Godfrey v. Fred Meyer Stores*, 202 Or App 673, 680, 124 P3d 621 (2005) ("Ordinarily, *dictum*—even Oregon Supreme Court *dictum*—about the construction of a statute has no particular precedential force.").

Specifically, defendants express concern that our *dictum* expands the scope of exceptions under ORS 90.385(4) to excuse otherwise unlawful evictions.[3] Contrary to petitioner's assertion, the cited statements do not create new exceptions under ORS 90.385(4); rather, they underscore our holding that a tenant alleging retaliation by the landlord under ORS 90.385(1) has the burden of proof to show an improper intent by the landlord. We lack the authority to create a new statutory exception, because we can neither insert into a statute language the legislature has omitted nor omit from a statute language that the legislature has inserted. ORS 174.010. Nonetheless, for clarity, we now retract the paragraph at 244 Or App at 390 quoted above.

---

[3] The 2011 legislature amended ORS 90.385(4) to clarify that the landlord's retaliation defense that the tenant is in default in rent applies only if the tenant was in default at the time of the retaliatory action. Or Laws 2011, ch 42.

Defendants also contend that our *dictum* will require revision of standard court forms and self-help brochures that indicate tenants cannot be evicted by their landlords for complaining about needed repairs. However, the Uniform Civil Jury Instruction No. 80.02 (Retaliation for Complaint to Landlord—As Defense to No-Cause Eviction) provides:

> "The tenant must prove the landlord retaliated against the tenant for a complaint made by the tenant or by someone acting on the tenant's behalf, or to evade a legal duty owed to the tenant that the landlord is required to fill. *If the landlord's motivation is not retaliatory, the tenant has not proved the defense.*"

(Emphasis added.) Thus, the uniform jury instruction is consistent with our conclusion that a landlord's motivation (*i.e.*, state of mind) matters.

Finally, defendants seek guidance on how tenants can meet the legal standard to establish intent in future cases. Defendants propose that the timing of events is relevant to whether a tenant has a retaliation claim or defense under ORS 90.385 and urge us to adopt the proposition that a reasonable trier of fact, in light of the facts in a given case, may draw a permissible inference that the landlord's act was motivated by the tenant's complaint.

This suggestion is not inconsistent with our opinion. We recognized that, by eliminating the burden-shifting scheme, the legislature discarded temporal proximity as sufficient for a tenant to establish a *prima facie* rebuttable presumption of retaliation that would shift the burden to the landlord to demonstrate the eviction was nonretaliatory. *Elk Creek Management Co.*, 244 Or App at 389. Whether the trier of fact can consider timing alone or in connection with any other facts a tenant may adduce to draw an inference about the landlord's improper motive is a different issue. We are limited to evaluating the facts and circumstances before us.[4] The issues facing us in this case require us to interpret the

---

[4] This court does not provide guidance on hypothetical questions that are not ripe for adjudication. *US West Communications v. City of Eugene*, 336 Or 181, 190, 81 P3d 702 (2003).

meaning of "retaliate" in ORS 90.385 and not to advise parties on how to meet the legal standard.

In sum, we adhere to our original opinion, with the modification of deleting the paragraph at 244 Or App at 390, quoted above, and this clarification as to the *dictum* about *chronology*: We were discussing legislative history only and concluded, based on that legislative history, that a tenant cannot rely solely on chronology to establish a presumption of retaliation.

Reconsideration allowed; former opinion modified and adhered to as modified.