Argued and submitted January 7, decision of Court of Appeals reversed, judgment of circuit court reversed, and case remanded to circuit court for further proceedings May 31, 2013

ELK CREEK MANAGEMENT COMPANY,
*Respondent on Review*,

*v.*

Harold GILBERT
and Melissa Strittmatter,
*Petitioners on Review*.

(CC M09072786; CA A143348; SC S060187)

303 P3d 929

Edward Johnson, Oregon Law Center, Portland argued the cause and filed the brief for petitioners on review.

Respondent on review waived briefing and oral argument.

WALTERS, J.

## WALTERS, J.

ORS 90.385 prohibits a landlord from "retaliat[ing] by" serving notice to terminate a tenancy after the tenant has made a complaint that is in good faith and related to the tenancy.[1] In this case, we conclude that, to prove retaliation under ORS 90.385, a tenant must establish that the landlord served the notice of termination *because of* the tenant's complaint. The tenant need not prove, in addition, that the complaint caused the landlord actual or perceived injury or that the landlord intended to cause the tenant equivalent injury in return. We reverse the decision of the Court of Appeals, *Elk Creek Management Co. v. Gilbert*, 244 Or App 382, 260 P3d 686 (2011), *adh'd to as modified on recons*, 247 Or App 572, 270 P3d 362 (2012), and the judgment of the circuit court, and we remand the case to the circuit court for further proceedings.

This case concerns a month-to-month tenancy pursuant to a written rental agreement. After the landlord gave the tenants a 30-day no-cause notice of termination of tenancy and the tenants failed to vacate the premises, the landlord filed an action for possession. The tenants filed an answer denying that the landlord was entitled to possession and alleging that the landlord had given notice of termination because of the tenants' legitimate complaints. The trial court rejected the tenants' defense and made written Findings of Fact and Conclusions of Law, which serve as the basis for our recitation of the underlying facts.[2] We recite those facts as background for the legal issue presented—the meaning of ORS 90.385.

---

[1] ORS 90.385 provides, in part:

"(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services, by serving a notice to terminate the tenancy or by bringing or threatening to bring an action for possession after:

"* * * * *

"(b) The tenant has made any complaint to the landlord that is in good faith and related to the tenancy[.]"

[2] In our discussion of the facts, we refer to Nancy DeBoer, the owner of the premises, as "the owner." The owner employed plaintiff Elk Creek Management Company to manage her property, and plaintiff in turn employed Shelly Gluch. We refer to Gluch as "the manager." We refer collectively to the owner and plaintiff as "the landlord." We refer to defendants, Harold Gilbert and Melissa Strittmatter, as "the tenants."

At some time before May 19, 2009, the tenants "made some sort of general complaint(s) to [the owner] about the electrical system on the property." The manager also had noticed a bent service mast and had become concerned about the property's electrical service. On May 19, the landlord gave the tenants written notice that the owner wanted to do a "walk-through" of the premises. That notice stated that the owner was going to "check out the breaker box and want[ed] to see the floor in the bathroom." After the initial walk-through, the manager advised the tenants that she wanted to do another walk-through on June 16. A licensed electrician accompanied the owner and the manager on that second walk-through, and, at its conclusion, the electrician recommended that the owner make repairs to the electrical system. It was apparent "to everyone" that those repairs would "involve a cost to the owner." The manager called the tenants the next afternoon and informed them that the owner had decided to terminate their lease. The following day, the tenants received a 30-day no-cause termination notice and a note from the manager, which stated:

> "I am sorry that I have to give you the thirty days notice. [The owner] has several repairs including updating the electrical. If there is anything I can do please let me know."

At trial, the manager testified that she had issued the notice of eviction based on instructions from the owner. The owner did not testify.

In its Findings of Fact and Conclusions of Law, the trial court recognized that "[i]t is a landlord's duty during a tenancy to 'maintain the dwelling unit in a habitable condition' and [to maintain the] 'electrical lighting with wiring and electrical equipment * * * in good working order.' ORS 90.320(1)(e)." The court found that the electrical system for the dwelling in question was not in good working order. The court further found that (1) it was "a reasonable inference that [the tenant's] conversations with [the owner] as well as [the manager's] concern with the service mast caused [the owner] to want to do the initial walk-through on May 19th";[3]

---

[3] In addition, and in accordance with the May 19 notice, the court found that the owner had initiated the walk-through to "check out the breaker box and * * *

and (2) there was no evidence of the owner's reason for termination other than that expressed in the note sent by the manager—that the owner "has several repairs including updating the electrical." The court concluded, however, that the tenants had not established that the tenancy termination constituted "retaliation" by the owner:

> "The concept of *retaliation* (*lex talionis*) has ancient foundations and in common language is easily understood in metaphors such as 'an eye for an eye' or 'a tooth for a tooth.' The essence of the concept is that when one suffers a real or perceived wrong, a like injury will be inflicted upon the one who did the initial real or perceived harm. [The tenants] inflicted no wrong upon [the owner] when they noted some problems involving the electrical system. Nor did [the owner] attempt to respond in a wrongful manner by attempting to harm [the tenants] by terminating their tenancy when such complaint(s) were made. In fact, it appears that during the tenancy [the owner] has spent considerable sums attempting to maintain the premises in a habitable condition during the tenancy, and took no action against [the tenants] when they were previously in default on their rent. In fact, the conduct and circumstances involved in this case on the part of both [the tenants] and [the owner] are rather innocuous in this Court's opinion. The facts of this case do not in this Court's opinion establish that the tenancy termination constituted *retaliation* by [the owner] against [the tenants] because they expressed at some point prior to the termination that they had some electrical concerns regarding the premises."

(Emphases in original; footnotes omitted.)

The tenants appealed and the Court of Appeals affirmed. *Elk Creek Management Co. v. Gilbert*, 244 Or App 382, 260 P3d 686 (2011) (*Elk Creek I*). The Court of Appeals held that "[t]he concept of retaliation as the term is used in ORS 90.385 involves an intention on the part of the landlord to cause some sort of disadvantage to the tenant, motivated by an injury (or perceived injury) that the tenant has caused the landlord[,]" and that the tenants had failed to prove those facts. *Id.* at 390. The court also included in its

---

floor in the bathroom." The court did not explain the apparent discrepancy between that finding and its finding that the manager's concern about the service mast was one of the reasons for the walk-through.

opinion two additional sets of statements. One set of statements concerned a landlord's options if the landlord could not afford to make repairs or decided to take the property off the market:

> "We agree that requiring a retaliatory motive might decrease a tenant's confidence that his or her complaint will not lead to eviction. A tenant may realize that an opportunistic landlord could, with no intent to inflict a retributory injury whatsoever, evict the tenant because the landlord could not afford to make the repairs or decided to take the property off the market completely. Such a landlord has not violated ORS 90.385 simply because the eviction follows on the heels of a tenant's complaint, at least as the statute is now written—the product, as the legislative history cited above demonstrates, of political compromise between interests representing landlords and tenants."

*Id.* Another set of statements concerned the role of temporal proximity in demonstrating retaliation:

> "Legislative history is not always illuminating, but we can say with a high degree of confidence that *this* legislative history, in the absence of statutory text on the issue, demonstrates that, under the current version of ORS 90.385, a tenant cannot rely on chronology—a complaint soon followed by a notice of eviction—to establish a presumption of retaliation that the landlord must then rebut. Thus, in order to prevail in this case, defendants have to affirmatively establish retaliation, and the outcome here depends on what that term means."

*Id.* at 389 (emphasis in original).

The tenants sought reconsideration. They contested the court's interpretation of ORS 90.385 and also asked the court to reconsider the two sets of statements, which the tenants characterized as "*dicta* that will have sweeping, dangerous, and presumably unintended consequences for tenants." *Elk Creek Management Co. v. Gilbert*, 247 Or App 572, 574, 270 P3d 362 (2012) (*Elk Creek II*). The court granted the tenants' motion in part. It declined to revisit the issue of statutory construction but addressed the tenants' arguments about the two sets of statements. First, the court considered the tenants' argument that, by permitting landlords to evict tenants if landlords could not afford repairs or decided to

take the leased property off the market, the court had created two new statutory exceptions to a tenant's retaliation defense. The court agreed with the tenants that it did not have authority to insert statutory exceptions and retracted the offending paragraph. *Id*. at 579.

Second, the court considered the tenants' argument that temporal proximity could, under some circumstances, constitute evidence of retaliation. *Id*. at 580. The court explained that the legislative history that it had reviewed demonstrated that the legislature had "discarded temporal proximity as sufficient for a tenant to establish a *prima facie* rebuttable presumption of retaliation that would shift the burden to the landlord to demonstrate the eviction was nonretaliatory." *Id*. However, the court clarified, the tenants' suggestion that a reasonable trier of fact could draw from such evidence "a permissible inference that the landlord's act was motivated by the tenant's complaint" was consistent with its opinion. *Id*.

We allowed the tenants' petition for review to consider the tenants' argument that the Court of Appeals incorrectly interpreted ORS 90.385 when it declared that "[t]he concept of retaliation as the term is used in ORS 90.385 involves an intention on the part of the landlord to cause some sort of disadvantage to the tenant, motivated by an injury (or perceived injury) that the tenant has caused the landlord." *Elk Creek I*, 244 Or App at 390. The tenants contend that, to prove retaliation under ORS 90.385, a tenant must prove only that a landlord took one of the actions specified in ORS 90.385 because a tenant engaged in a statutorily protected activity; no additional proof of injury or intent to harm is required.

The landlord did not file a brief in this court, but, as the Court of Appeals recognized, "[o]ur task is to interpret the statute correctly regardless of the parties' interpretations and concessions." *Id*. at 387 (citing *Stull v. Hoke*, 326 Or 72, 77, 948 P2d 722 (1997) ("In construing a statute, this court is responsible for identifying the correct interpretation, whether or not asserted by the parties.")). We begin the task of statutory construction with the text of the statute at issue. *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 90.385(1) prohibits a landlord from "retaliat[ing] by" taking certain described acts "after" a tenant has engaged in certain described activities.[4] A landlord may not retaliate by (1) "increasing rent or decreasing services"; (2) "serving a notice to terminate the tenancy"; or (3) "bringing or threatening to bring an action for possession," after a tenant has (1) made or expressed an intent to make specified complaints, including a complaint that is "in good faith and related to the tenancy"; (2) "organized or become a member of a tenants' union or similar organization"; (3) "testified against the landlord in any judicial, administrative or legislative proceeding"; (4) with certain exceptions, "successfully defended an action for possession brought by the landlord within the previous six months"; or (5) "performed or expressed intent to perform any other act for the purpose of asserting, protecting or invoking the protection

---

[4] ORS 90.385(1) provides:

"Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services, by serving a notice to terminate the tenancy or by bringing or threatening to bring an action for possession after:

"(a) The tenant has complained to, or expressed to the landlord in writing an intention to complain to, a governmental agency charged with responsibility for enforcement of any of the following concerning a violation applicable to the tenancy:

"(A) A building, health or housing code materially affecting health or safety;

"(B) Laws or regulations concerning the delivery of mail; or

"(C) Laws or regulations prohibiting discrimination in rental housing;

"(b) The tenant has made any complaint to the landlord that is in good faith and related to the tenancy;

"(c) The tenant has organized or become a member of a tenants' union or similar organization;

"(d) The tenant has testified against the landlord in any judicial, administrative or legislative proceeding;

"(e) The tenant successfully defended an action for possession brought by the landlord within the previous six months except if the tenant was successful in defending the action only because:

"(A) The termination notice by the landlord was not served or delivered in the manner required by ORS 90.155; or

"(B) The period provided by the termination notice was less than that required by the statute upon which the notice relied to terminate the tenancy; or

"(f) The tenant has performed or expressed intent to perform any other act for the purpose of asserting, protecting or invoking the protection of any right secured to tenants under any federal, state or local law."

of any right secured to tenants under any federal, state or local law."

The tenant activities that the statute protects are acts that a tenant has a right to take. For instance, ORS 90.360 expressly permits a tenant to give a landlord notice of a failure to materially comply with ORS 90.320, the statute that requires that landlords maintain leased premises in a habitable condition, and ORS 105.137 permits a tenant to defend against a landlord's action for possession. The final subparagraph of ORS 90.385(1), subparagraph (f), protects a tenant from retaliation after a tenant has performed "*any other act* for the purpose of asserting, protecting or invoking the protection of any right secured to tenants under any federal, state or local law." (Emphasis added.) That subparagraph recognizes that there are many laws that grant tenant rights and indicates a legislative intent to protect tenants from retaliation when they exercise those rights. The legislature's use of the phrase any "other act" in subparagraph (f) refers back to the acts specifically listed in the preceding subparagraphs and suggests that they too describe acts that a tenant has the right to take. Thus, ORS 90.385 describes two categories of acts: those that a landlord is prohibited from taking in retaliation and those that a tenant has the right to take and that the legislature protects against retaliation.

In describing the relationship between the prohibited landlord acts and the protected tenant acts, ORS 90.385 states that a landlord may not "retaliate by" taking one of the prohibited acts "after" the tenant has taken one of the protected acts. ORS 90.385 does not expressly require that a tenant demonstrate that the tenant's protected acts caused injury to the landlord or that the landlord perceived the tenant's acts as causing injury. ORS 90.385 also does not expressly require that a tenant demonstrate that a landlord took one of the prohibited acts with an intent to cause injury to the tenant. Thus, the question before us is whether the legislature nevertheless intended to impose those requirements, and, if not, what requirement or requirements the legislature did intend to impose.

The trial court and the Court of Appeals discovered the requirements of injury and intention to impose injury in return in the word "retaliate." The trial court interpreted that word to capture the concept of *"lex talionis,"* which the court described as having ancient foundations and as being easily understood in metaphors such as "an eye for an eye" or "a tooth for a tooth."[5] The essence of that concept, as the trial court described it, is that, "when one suffers a real or perceived wrong, a like injury will be inflicted upon the one who did the initial real or perceived harm." In 1973, when the Oregon legislature enacted ORS 90.385, *Black's Law Dictionary* defined *"lex talionis"* as "[t]he law of retaliation; which requires the infliction upon a wrongdoer of the same injury which he has caused to another." *Black's Law Dictionary* 1058 (4th ed 1968). At that time, *Webster's* defined *"lex talionis"* as "[l]iterally, law of retaliation;—in primitive societies, the custom of inflicting a similar injury upon one who inflicts an injury, as in the Old Testament law of an eye for an eye, etc." *Webster's Second New Int'l Dictionary* 1423 (unabridged ed 1934).[6]

ORS 90.385 obviously does not *require* that a landlord punish a tenant according to the wrong inflicted by the tenant. It could, however, *prohibit* a landlord's exercise of *lex talionis*, and that is the construction that the Court of Appeals apparently adopted. The court determined that "retaliate" means to "repay or requite in kind (as an injury)" or "to put or inflict in return." *Elk Creek I*, 244 Or App at 389-90. The court reasoned that, when the legislature prohibited a landlord from retaliating against a tenant, it intended to prohibit a landlord that suffers injury from causing a tenant injury in kind. *Id*. at 390. In Biblical terms, the court decided, the legislature intended to bar a landlord from taking "an eye for an eye."

---

[5] Those phrases appear in the Book of Exodus: "[T]hou shalt give life for life, eye for eye, tooth for tooth[.]" Exodus 21:23-24 (King James).

[6] The ancient law of *lex talionis* may have served to limit vengeful retribution. The Code of Hammurabi provided for a system of punishment proportional to the crime, and Hebrew law restricted compensation to the value of the loss. *See* W. Gunther Plaut & David E. Stein eds., *The Torah : A Modern Commentary*, 528-29 (rev 2005). Thus, the concept of *lex talionis* might more properly be described as only one eye for one eye. *See also* Thomas A. Balmer, *Some Thoughts on Proportionality*, 87 Or L Rev 783, 784-85 (2008).

The correct construction of ORS 90.385 does not, however, turn only on the dictionary definition of one of its words. We also must consider the context in which the legislature used the word "retaliate" and other indicators of the legislature's intent. *Gaines*, 346 Or at 171-72. When we do so, we conclude, for the reasons that follow, that the legislature did not intend to require that a tenant prove that the tenant's protected act caused the landlord actual or perceived injury or that the landlord intended to cause the tenant injury in return; rather, the statute is satisfied if the landlord made the decision to act *because of* the tenant's protected activity.

First, as explained, a tenant who takes one of the actions referenced in ORS 90.385(1) takes an action that the tenant has a right to take and that the legislature intends to protect. For instance, a tenant has a right to notify a landlord of necessary repairs. ORS 90.360(1)(a) (tenant may notify landlord of material noncompliance with ORS 90.320). A tenant's exercise of that right provides the landlord with information that enables it to meet its statutory obligation to maintain leased premises in habitable condition. ORS 90.320. Thus, when the legislature prohibits the landlord from retaliating, the legislature advances two interconnected interests: an interest in allowing tenants to assert their statutory rights, and an interest in having landlords fulfill their statutory obligations. It would be inconsistent with those interests for the legislature to impose a requirement that the tenant prove that his or her exercise of those rights caused the landlord injury.

Second, the enactment history of ORS 90.385 demonstrates that the legislature did not intend to require proof of injury or intent to harm. The Oregon Residential Landlord and Tenant Act (ORLTA), which includes ORS 90.385, was enacted in 1973.[7] The ORLTA was modeled on the Uniform Residential Landlord and Tenant Act (1972) (URLTA), *Elk Creek I*, 244 Or App at 387, and, as originally enacted, ORS 90.385 mirrored section 5-101 of that Uniform Act.[8] Both acts prohibited a landlord from "retaliat[ing] by"

---

[7] *Former* ORS 91.865 (1973), *renumbered as* ORS 90.385 (1989).

[8] Section 5-101 of the Uniform Residential Landlord and Tenant Act (1972) (URLTA) provides, in part:

taking specified actions after a tenant had engaged in protected activities, including complaining of a landlord's violation of statutory habitability requirements, and both acts included a "disputable presumption" that the landlord had engaged in retaliation if the landlord acted within a specified period after the tenant's protected activity. Under the URLTA, that period was one year; under the ORLTA, that period was six months.

Section 5-101 of the URLTA included a comment that explained that, before the adoption of either act, courts in seven states and the District of Columbia had "upheld the defense of retaliatory eviction" and that other states had recognized that defense by statute.[9] Chronologically, the

---

"(a) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:

"* * * * *

"(2) the tenant has complained to the landlord of a violation under [a different section of the URLTA requiring that the landlord maintain the premises].

"* * * * *

"(b) * * * In an action by or against the tenant, evidence of a complaint within [1] year before the alleged act of retaliation creates a presumption that the landlord's conduct was in retaliation."

ORS 91.865 (1973), *renumbered as* ORS 90.385 (1989), provided:

"(1) Except as provided in this section, a landlord may not retaliate by increasing rent or decreasing services or by bringing or threatening to bring an action for possession after:

"* * * * *

"(b) The tenant has complained to the landlord of a violation under ORS 91.770 [a different statute requiring that landlord maintain premises in habitable condition]

"* * * * *

"(2) * * * In an action by or against the tenant, evidence of a complaint within six months before the alleged act of retaliation creates a disputable presumption that the landlord's conduct was in retaliation * * *."

[9] The comment to Section 5-101 of the URLTA provides:

"State and federal courts in California (*Aweeka v. Bonds*, 20 Cal.App.3d 281, 97 Cal.Rptr. 650 [1971]; *Schweiger v. Bonds*, 3 Cal.App.2d 507, 90 Cal. Rptr. 729 [1970] ), Florida (*Bowles v. Blue Lake Development Corp.*, [S.Florida, 1971], C.C.H.Pov.L.Rptr. Sec. 12,920), Massachusetts (*McQueen v. Druker*, 317 F.Supp. 1122 [D.Mass.1970] ), New Jersey (*Alexander Hamilton Savings and Loan Assn. v. Whalen*, 107 N.J.Super. 89, 257 A.2d 7 [1969]; *Engler v. Capital Management Corp.*, 112 N.J.Super. 445, 271 A.2d 615 [1970]; *E. E. Newman Inc. v. Hallock*, 116 N.J.Super. 220, 281 A.2d 544 [1971]; *Silberg v. Lipscomb*, 117 N.J.Super. 491, 285 A.2d 86 [1971] ), New York (*Hosey v. Club*

first of the cited cases was *Edwards v. Habib*, 397 F2d 687 (DC Cir 1968). In that case, the court held that, although a landlord is entitled to "evict for any legal reason or for no reason at all," the landlord may not "evict in retaliation for his tenant's report of housing code violations to the authorities." *Id.* at 699. The court explained that implementation of the District of Columbia housing codes depends on private individuals taking initiative and reporting violations. Therefore, the court reasoned, permitting the eviction of tenants who make such reports would frustrate the codes' effectiveness and violate public policy.[10] *Id.* at 699-701. The court observed that trial courts could determine the reason for a landlord's eviction in the same way that they decide other questions of fact:

> "The question of permissible or impermissible purpose is one of fact for the court or jury, and while such a determination is not easy, it is not significantly different from problems

---

*Van Courtlandt*, 299 F.Supp. 501 [S.D.N.Y.1969] ), Ohio (T.R.O. granted, Case No. 8375 [S.D.Ohio] ), Wisconsin (*Dickhut v. Norton*, 45 Wis.2d 309, 173 N.W.2d 297 [1970] ) and the District of Columbia (*Edwards v. Habib*, 397 F.2d 687 [D.C.Cir.1968] ) have upheld the defense of retaliatory eviction.

"A number of states by statute have recognized the defense: Cal.C.C. Sec. 1942.5; Conn.Gen.St.Ann., Sec. 42-540a [Supp.1969]; Del.Ch. 25 Sec. 5917 [Supp.1971]; Ha.Ch. 666 Sec. 43 [Supp.1971]; Ill.Rev.St.Ch. 80, Sec. 71 [Supp.1971]; Me.Rev.St. Tit. 14 Sec. 6001, 6002; Md.Laws Ch. 687 Sec. 9-10 [Supp.1971]; Mass.Comp.Laws Ann., Ch. 186 Sec. 18 [Supp.1970]; Mich. Comp.Laws Ann., Ch. 600, Sec. 5646 [Am'd P.S.1969]; Minn.Stat.Ch. 240 Sec. 566.03 [Supp.1971]; N.J.Stat.Ann. 2A Sec. 42-10.10; N.Y. [McKinney's] Unconsolidated Laws, Tit. 23 Sec. 8590, 8609 [Supp.1971]; Pa.St.Ann.Ch. 35, Sec. 1700-1 (Supp.1971]; R.I. Gen.Laws Ann. Sec. 34-20-10 [1968]. The legislatures of Maine, Massachusetts, New Jersey, Michigan, and Rhode Island also protect tenants from eviction if they have organized or become a member of a tenants' union or similar organization."

Uniform Residential Landlord and Tenant Act § 5-101 cmt (1972).

By 1979, *Black's Law Dictionary* reflected the holdings in the cases cited in the comment. It defined "retaliatory eviction" as an "[a]ct of landlord in commencing eviction proceedings against a tenant *because of* tenant's complaints, participation in tenant's union or like activities with which the landlord is not in agreement." *Black's Law Dictionary* 1183 (5th ed 1979) (emphasis added).

[10] The court cited other cases that had used a similar rationale in analogous circumstances. *See Edwards*, 397 F2d at 699 n 38. One of those cases was *Petermann v. International Brotherhood of Teamsters*, 174 Cal App 2d 184, 344 P2d 25 (1959). In *Petermann*, a California Court of Appeal held that, although a plaintiff's employment was at-will, his employer was prohibited from firing him for refusing to give false testimony. This court also cited *Petermann* in *Nees v. Hocks*, 272 Or 210, 216, 536 P2d 512 (1975) (holding that, although the plaintiff's employment was at-will, her employer was precluded from firing her for serving on a jury).

with which the courts must deal in a host of other contexts, such as when they must decide whether the employer who discharges a worker has committed an unfair labor practice because he has done so on account of the employee's union activities. * * * There is no reason why similar factual judgments cannot be made by courts and juries in the context of economic retaliation (against tenants by landlords) for providing information to the government."

*Id.* at 702-03 (internal quotation marks and footnotes omitted).

Courts in a number of the other cases cited in the comment to Section 5-101 of the URLTA relied on *Edwards* in recognizing the equitable defense of "retaliatory eviction." One of those cases was *Engler v. Capital Management Corporation*, 112 NJ Super 445, 271 A2d 615 (1970) (recognizing defense). After the New Jersey Court decided *Engler*, the New Jersey Legislature enacted a statute that adopted a similar defense. That statute prohibited a landlord from evicting a tenant as a "reprisal" for specified tenant activities and created a rebuttable presumption of reprisal when the landlord evicted a tenant within 90 days of such activities. *See* NJ Stat Ann §§ 2A:42-10.10, 2A:42-10.12. The New Jersey Supreme Court construed that statute in *Silberg v. Lipscomb*, 117 NJ Super 491, 285 A2d 86 (1971), also cited in the comment to the Uniform Act.

In *Silberg*, the landlord argued that it had given the tenants notice of eviction because, after learning that the tenants had formed an association and had complained about the condition of the premises, the landlord had decided to subdivide the property and sell the houses as two-family units. *Silberg*, 117 NJ Super at 493. The landlord testified that, although the work necessary to prepare the premises for subdivision could occur while the tenants occupied their dwellings, he had decided that the cost of proceeding in that way was prohibitive and therefore had evicted the tenants. The court found that the tenants had failed to establish any "actual malice or hostility toward them as the basis for the landlord's eviction proceedings." *Id.* at 494. Nevertheless, the court concluded, the tenant had established "reprisal" as that term was used in the statute. Although the court was

satisfied that the "dominant" reason for the landlord's decision was the cost of the contemplated work, the court also found that the landlord had prepared the notices of eviction before he had decided the full nature and extent of the work and that he had not actually weighed the possibility of performing the work with the tenants in possession. *Id.* at 495. Therefore, the court was not satisfied that, but for the tenants' action, "further and more complete consideration by the landlord would not have taken place." The court held that

> "where a landlord, in reaching a decision to evict a tenant, considers as one of the factors favoring that decision the activities of the tenant described in [the statute], then the notice to quit is a 'reprisal' within the meaning of the act, although other factors may also be present or even dominant."

*Id.* at 496. Because the landlord had acted within 90 days of the tenants' protected activity, the landlord could overcome the presumption of retaliation only on a showing that "the decision to evict was reached independent[ly] of any consideration of the activities of the tenants protected by the statute." That, the court concluded, the landlord had failed to do.[11] *Id.*

The next year, the National Conference of Commissioners on Uniform State Laws adopted the URLTA, which, as noted, prohibited landlords from "retaliat[ing] by" taking specified actions "after" a tenant engaged in certain protected activities and also included a "disputable presumption" of retaliation if the landlord's action followed the tenant's within one year. When they adopted that framework, the drafters were cognizant not only of the New Jersey statute, but also of the "retaliatory eviction" statutes that had been enacted in other states, as evidenced by the fact that the drafters cited those statutes in the comment to Section 5-101 of the Uniform Act.

A review of the statutes cited in the comment to Section 5-101 of the URLTA indicates that state legislatures had taken various approaches to the problem of retaliatory

---

[11] In reaching its conclusion, the court also cited *E & E Newman, Inc.*, 116 NJ Super 220, 281 A2d 544 (1971), another of the cases cited in the URLTA comment.

eviction. Statutes in Minnesota and Rhode Island prohibited a landlord from taking action "intended as a penalty" for a tenant's protected activities. Minn Stat § 566.03 (1971); RI Gen Laws Ann 34-20-10 (1968). A Connecticut statute made it unlawful for a landlord to take action "solely because" the tenant attempted to lawfully remedy a housing condition. Conn Gen Stat Ann § 19-375a (1958). A California statute precluded a landlord from gaining possession of a dwelling unit if the landlord's "dominant purpose" was retaliation against the tenant. Cal Civ Code § 1942.5 (1970). An Illinois statute stated that it was a violation of state public policy for a landlord to terminate a tenancy "on the ground that" the tenant had complained of a code violation. Ill Rev Stat ch 80, para 71 (1963). And a New York statute prohibited the landlord from acting "because" of the tenant's protected activity. NY McKinney's Unconsol Laws, § 8590 (1971). Like the New Jersey statute, other statutes cited in the official comment simply prohibited retaliation and included a presumption that retaliation had occurred when the landlord's action took place within a specified period after the tenant's protected activity. *See, e.g.*, 1969 Md Laws page no 1469; Mass Gen Laws Ann, ch 186, § 18 (1969).

Aware of those differing approaches, the drafters of the URLTA chose as its template a formulation close to the one that the New Jersey Legislature had adopted. We therefore conclude that the drafters of the Uniform Act deliberately chose not to include a requirement, such as that included in the Minnesota statute, that the landlord intend its action as a penalty for the tenant's conduct. Instead, the drafters chose to require proof that the landlord had "retaliate[d] by" taking action after a tenant engaged in protected activity, consistent with the New Jersey formulation. The New Jersey Supreme Court had decided that the New Jersey statute did not require proof of a landlord's "malice or hostility." If the URLTA framers had wanted to include such a requirement in their "retaliatory eviction" defense, it is likely that they would have done so explicitly or used an alternative formulation that more clearly incorporated that concept.

As noted, when the Oregon legislature enacted ORS 90.385 in 1973, it adopted Section 5-101 of the URLTA nearly

verbatim and had before it the URLTA comment to that section. *See* Testimony, House Committee on Local Government and Urban Affairs, SB 159, Feb 21, 1973 (letter from Charles R. Williamson to Senator Burns); Testimony, House Committee on Local Government and Urban Affairs, SB 159, Feb 21, 1973 (letter from Charles R. Williamson to Senator Anthony Meeker). We therefore conclude that the Oregon legislature's original intent was consistent with the intent of the drafters of the URLTA; when the Oregon legislature used the word "retaliate" in ORS 90.385, it did not intend to invoke the ancient concept of *"lex talionis."*

The legislature's amendment of the ORLTA in 1979 and its deletion of the disputable presumption does not change our conclusion.[12] The legislative history of that amendment is accurately set out in *Elk Creek I*, 244 Or App at 388-89, and is further discussed in *Elk Creek II*, 247 Or App at 580. Before the amendment, the disputable presumption allowed the tenant to shift the burden of persuasion to the landlord so that the landlord was required to prove that its action, if taken within six months of the tenant's protected activity, was not retaliatory. *Former* ORS 91.865(2) (1973), *amended by* Or Laws 1979, ch 643, § 1. Under the current statute, the tenant no longer can shift the burden of proof to the landlord. That does not mean, however, that the tenant must now prove that the landlord suffered injury and intended injury in return. As amended, ORS 90.385 continues to require a tenant to demonstrate that the landlord acted because of a tenant's engagement in protected activity.

Our review of the Oregon legislature's use of the word "retaliate" or "retaliation" in other statutes confirms that interpretation. The legislature commonly uses those words throughout the Oregon Revised Statutes without any indication that they impose a requirement that the party asserting retaliation must prove that he or she caused actual or perceived injury or that the other party acted with an intent to injure in return. Instead, the legislature commonly uses those words in conjunction with the word "because" or other words that require a causal connection between

---

[12] Or Laws 1979, ch 643, § 1.

one party's acts and another party's protected activity. For example, ORS 441.174(1) provides that "[a] hospital may not take *retaliatory action* against a nursing staff *because* the nursing staff * * * files a * * * complaint" regarding unsafe care, and ORS 659A.082(2)(c) provides that "[i]t is an unlawful employment practice for an employer to discriminate against a person because of the person's [military] service * * * by * * * *retaliating* against the person *for* exercising or attempting to exercise" the person's rights as a servicemember.[13] (Emphases added.) Although none of those statutes prohibits retaliation by landlords, other statutes that do pertain to landlords prohibit them from taking specified actions against a tenant "because" of the tenant's protected status or activity. For example, ORS 659A.145 prohibits a landlord from discriminating "because" of a disability of a tenant by expelling the tenant or by refusing to permit reasonable accommodations necessary to the tenant's use and enjoyment of the property.[14] Similarly, ORS 90.449 prohibits a landlord from terminating a tenancy "because" the tenant

---

[13] *See also* ORS 441.172(6) (defining "[r]etaliatory action" as conduct taken "as a result of" a nursing staff's filing of a complaint); ORS 25.337(2) (same for person making child medical support payments); ORS 774.140(1) (prohibiting utilities from retaliating against consumers "because" of a consumer's participation in the Citizens' Utility Board); ORS 430.673(3) (prohibiting counties from retaliating against community mental health programs and community developmental disabilities programs "because" a program attempts to mediate a dispute between the program and a county); ORS 621.730(3) (prohibiting participants in the milk industry from retaliating against milk producers "because" a producer requests official testing of milk); ORS 659A.096(2) (prohibiting employers from retaliating against servicemembers "because" a servicemember requests military family leave); ORS 659A.183(2) (same for employee's request for family leave); ORS 659A.277 (same for employee's request for leave to deal with domestic violence issues); ORS 659A.290(2)(b) (same for employee's status as victim of domestic violence); ORS 659A.318 (same for employee's having or seeking theology degree); ORS 185.170 (prohibiting employers from retaliating against Oregon Disabilities Commission members "for" member's giving of testimony to legislature); ORS 659A.312(3) (prohibiting employers from retaliating against employees "for" requesting leave to donate bone marrow); ORS 441.127(2) (prohibiting employers from retaliating against employees "for" reporting problems at long term care facilities); ORS 659A.199(1) (making it "an unlawful employment practice for an employer to * * * retaliate against an employee * * * for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation"); ORS 659A.230(1) (same for reporting crimes); ORS 659A.233 (same for reporting violations of certain state statutes); ORS 659A.259(1) (same for complaints about employee housing).

[14] ORS 659A.145(2) provides, in part:

"A person may not discriminate because of a disability of a purchaser, a disability of an individual residing in or intending to reside in a dwelling after

is a domestic violence victim.[15] We believe that ORS 90.385 requires a similar causal connection between the landlord's prohibited action and the tenant's protected activity; the legislature did not use the word "retaliate" to impose additional requirements that the landlord suffer actual or perceived injury or intend harm in return.

A question remains, however, about the height of the causal bar that the Oregon legislature requires Oregon tenants to clear. Did the Oregon legislature intend to require tenants to prove that a tenant's protected activity was the sole reason for the landlord's action, or did it intend to impose some other causal standard? As noted, the drafters of both the URLTA and the ORLTA chose a statutory framework similar to the New Jersey framework and declined to expressly require, as Connecticut and California had, that the tenant prove that the tenant's protected activity was the "sole" or "dominant" reason for the landlord's prohibited action. It is therefore likely that the drafters did not intend to impose either of those more strictly stated causal requirements.

That conclusion also is apparent when we consider another provision of both the URLTA and the ORLTA: a section providing that, "notwithstanding" the prohibition against retaliation, "a landlord may bring an action for possession" when certain other circumstances are present. Those circumstances include when a tenant is in default

---

it is sold, rented or made available or a disability of any individual associated with a purchaser by doing any of the following:

"(a) Refusing to sell, lease, rent or otherwise make available any real property to a purchaser.

"(b) Expelling a purchaser.

"* * * * *

"(f) Refusing to permit, at the expense of the individual with a disability, reasonable modifications of existing premises * * * necessary to afford the individual full enjoyment of the premises."

[15] ORS 90.499 provides, in part:

"(1) A landlord may not terminate or fail to renew a tenancy, serve a notice to terminate a tenancy, bring or threaten to bring an action for possession, increase rent, decrease services or refuse to enter into a rental agreement:

"(a) Because a tenant or applicant is, or has been, a victim of domestic violence, sexual assault or stalking."

in rent and when "compliance with the applicable building or housing code requires alteration, remodeling, or demolition which would effectively deprive the tenant of use of the dwelling unit." URLTA § 5.101(c);[16] ORS 90.385(4).[17] If the drafters had intended to require the tenant to prove that his or her protected activity was the sole reason for a landlord's decision to evict the tenant, then the "notwithstanding" provision would have been unnecessary.

We believe that the legislature instead intended to require a tenant to prove that the tenant's protected activity was a factor that made a difference in the landlord's decision. As noted, that requirement is consistent with the New Jersey Supreme Court's interpretation of the New Jersey statute used as a format for the URLTA and the ORLTA, and, as we will explain, that requirement also is consistent with this court's articulation of causal requirements in other contexts.

---

[16] URLTA § 5.101(c) provides:

"Notwithstanding [the anti retaliation provisions], a landlord may bring an action for possession if:

"(1) the violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant, a member of his family, or other person on the premises with his consent; or

"(2) the tenant is in default in rent; or

"(3) compliance with the applicable building or housing code requires alteration, remodeling, or demolition which would effectively deprive the tenant of use of the dwelling unit."

[17] ORS 90.385(4) provides:

"Notwithstanding [the anti retaliation provisions], a landlord may bring an action for possession if:

"(a) The complaint by the tenant was made to the landlord or an agent of the landlord in an unreasonable manner or at an unreasonable time or was repeated in a manner having the effect of unreasonably harassing the landlord. A determination whether the manner, time or effect of a complaint was unreasonable shall include consideration of all related circumstances preceding or contemporaneous to the complaint;

"(b) The violation of the applicable building or housing code was caused primarily by lack of reasonable care by the tenant or other person in the household of the tenant or upon the premises with the consent of the tenant;

"(c) The tenant was in default in rent at the time of the service of the notice upon which the action is based; or

"(d) Compliance with the applicable building or housing code requires alteration, remodeling or demolition which would effectively deprive the tenant of use of the dwelling unit."

In 1973, when the ORLTA was enacted, this court used the "substantial factor" test to determine the "cause in fact" of a plaintiff's injuries. *See Stewart v. Jefferson Plywood Co.*, 255 Or 603, 606, 469 P2d 783 (1970) (using "substantial factor" to describe "cause in fact" requirement); *Babler Bros. v. Pac. Intermountain*, 244 Or 459, 463, 415 P2d 735 (1966) (noting that, in most negligence cases, "the factual inquiry whether the actor's conduct was a substantial factor in producing the harm is relatively uncomplicated"); *Dewey v. A.F. Klaveness & Co.*, 233 Or 515, 541, 379 P2d 560 (1963) (phrasing the causation standard as whether the defendant's conduct was a "substantial factor" in physically producing the injury). Since then, this court has recognized that, in most cases, the "substantial factor" test yields the same result as the "but for" test of causation. In *Joshi v. Providence Health System*, 342 Or 152, 161, 149 P3d 1164 (2006), the court described the "but for" test as follows: "The defendant's conduct is a cause of the event if the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event, if the event would have occurred without it." The court explained, however, that the "but for" test fails where "two causes concur to bring about an event, and either one of them, operating alone, would have been sufficient to cause the identical result[.]" In that situation, the court reasoned, "[the] defendant's conduct is a cause of the event if it was a material element and a substantial factor in bringing it about." *Id.*

We conclude that when the legislature enacted ORS 90.385, it intended that trial courts test causation in the same way that they do in other contexts. As the D.C. Circuit Court remarked in *Edwards*, the reason for a landlord's decision to evict is a question of fact for a court or jury that is not significantly different from other questions of fact that those fact-finders confront in other areas of the law. *Edwards*, 397 F2d at 702-03. We conclude that ORS 90.385 requires a tenant to prove that, "but for" the tenant's protected activity, the landlord would not have made the decision that it did. In the circumstance in which, as described in *Joshi*, two causes concur, but either operating alone would have been sufficient to cause the result, a tenant also may prevail by proving that the tenant's protected activity was a "material

and substantial factor" in the landlord's decision. The tenant need not prove that the tenant's protected activity was the "sole" or "dominant" reason for the landlord's decision.

Having construed ORS 90.385, we now must determine its effect on the judgment in this case. The trial court's relevant findings and reasoning were as follows: The tenants complained to the owner about the electrical system, and the tenants' complaints were one of the reasons that the owner decided to do the initial walk-through of the premises. The owner then decided to do a second walk-through accompanied by an electrician. It was apparent to the owner that electrical repairs were necessary and would entail some cost. The next afternoon, the manager called the tenants and informed them that the owner had decided to terminate their lease. The following day, the manager delivered a notice of termination to the tenants, stating that "[the owner] has several repairs including updating the electrical." There was no evidence of any other reason for the termination of the tenancy.

Although the trial court decided that the tenants' complaints were one of the reasons that the owner decided to conduct the initial walk-through, the court did not explicitly decide whether the tenants' complaints also were one of the reasons that the owner decided to serve the notice of termination; the trial court speculated that the owner may have given that notice for other "valid business reasons."[18] Without explicitly elaborating on what those "valid business reasons" may have been, the trial court discussed whether the tenants had inflicted harm on the owner and whether the owner had attempted to harm the tenants by terminating their tenancy. The court observed that the owner had spent considerable sums on repairs in the past and described the conduct of both parties as "innocuous." However, as we have explained, whether the owner was thankful, threatened, or neutral when the tenants notified her of electrical problems, and whether the owner considered the costs of improving the electrical system injurious or simply

_____

[18] The trial court stated in a footnote that it was not possible to infer that "tenancy termination would never had occurred but for [tenants'] complaints" and that it thought it "more reasonable that [the owner] was terminating for valid business reasons, * * * but even this supposition is at best subject to speculation."

necessary, ORS 90.385 prohibited the owner from serving the tenants with notice of termination because of the tenants' complaints.[19] If the tenants' complaints were one of the factors that the owner considered in making her decision to evict, and the owner would not have made that decision "but for" the tenant's complaints, then the owner was prohibited from making that decision. That is true even if there also were other factors that the owner considered in arriving at her conclusion. If the owner had two different, independent reasons for deciding to evict the tenants, and either alone would have caused the owner to make the decision to evict, the owner also was prohibited from deciding to do so if the tenant's protected activity was one of those independent reasons.

In applying that test, it is important to recognize that a landlord has a statutory obligation to maintain leased premises in a habitable condition. ORS 90.320. The landlord therefore is required to make the repairs that are necessary to fulfill that obligation and to pay their associated cost. The repairs and their associated costs are not logically related to the tenant's occupancy except, of course, if the repairs are so extensive that they cannot be made while the dwelling is occupied. ORS 90.385(4)(d) recognizes that logic and permits a landlord to evict a tenant where compliance with the applicable building or housing code requires alteration, remodeling, or demolition which would effectively deprive the tenant of use of the dwelling unit. Except in that instance, the fact that repairs and their associated cost are statutorily compelled means that they cannot be a lawful reason for a landlord's decision to evict a tenant; or, said another way, the cost of statutory compliance cannot be a legitimate reason for a landlord to take a statutorily prohibited act against a tenant who exercises a statutorily protected right.

That does not mean, of course, that a landlord must continue to lease property that it owns or that a landlord

---

[19] That does not mean, of course, that a tenant is precluded from offering available evidence that a landlord experienced or perceived injury and acted in anger and with ill-will in return as probative of causation. *See Shockey v. City of Portland*, 313 Or 414, 423, 837 P2d 505 (1992) (considering such evidence in deciding whether plaintiff met burden of proof in employment context).

always is prohibited from evicting a tenant after the tenant complains about the condition of a dwelling. For example, if the landlord offers evidence that it made the decision to serve a notice of termination for some reason unrelated to the tenant's complaint, such as that the tenant failed to pay rent or violated other terms of the lease, or that it made its decision to evict before the tenant complained, a factfinder may conclude that the tenant's complaint was not a factor that made a difference in the landlord's decision.

In this case, the trial court could have inferred, from the temporal connection between the tenants' complaint and the owner's decision to evict them, that the tenants' complaints made a difference in the owner's decision. However, the trial court did not do so and instead speculated that the owner may have had other "valid business reasons" for her action. Although the record does not reveal any such reasons, we hesitate to decide what conclusion the trial court would have reached had it applied the correct legal standard. We therefore reverse and remand for further proceedings consistent with this decision.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is reversed, and the case is remanded to the circuit court for further proceedings.