# L & M INVESTMENT CO., *Appellant,*
*v.*
# MORRISON et ux, *Respondents.*
## (No. 166-925, CA 8310)
583 P2d 19

Michael H. Marcus, Greg Bennett, Richard Forester, Gary Roberts, Louis Savage, Michael Schumann, Ralph Smith, Beverly Stein, Legal Aid Service, Portland, for petition.

BUTTLER, J.

## BUTTLER, J.

In this petition for reconsideration, tenants contend that we erred in holding that the notice required by ORS 91.800(1) must be given before any of the remedies provided in ORS 91.800 are available. We adhere to our former opinion, *L & M Investment Co. v. Morrison,* 34 Or App 231, 578 P2d 462 (1978); however, we think some amplification of the problem in broader terms is desirable.

Prior to the adoption of the Act in 1973 (Oregon Laws 1973, ch 559), the statutory and case law in Oregon followed common law rules with respect to the landlord-tenant relationship, including the doctrine of independent covenants. Under that doctrine, the covenant to pay rent was enforceable independently of any covenant of the landlord to maintain the premises in a habitable condition. Thus, failure of the landlord to repair, etc., was not a defense to an action for possession (FED). This state of the law was challenged, on federal due process grounds, unsuccessfully in *Lindsey v. Normet,* 405 US 56, 92 S Ct 862, 31 L Ed 2d 36 (1972), giving rise to pressures for legislative change.[1]

In the meantime, the National Conference of Commissioners on Uniform State Laws adopted the Uniform Residential Landlord and Tenant Act, which was proposed to the 1973 legislature in Oregon. The Act, as finally adopted, copied the structure of the Uniform Act, but with some changes in the substantive provisions.[2] Among the fundamental changes in the Oregon law accomplished by the Act are the substantial

---

[1] *See Comment, The Evolution of the Oregon Residential Landlord and Tenant Act,* 56 Or L Rev 655 (1977), for a discussion of the legislative history from which the summary herein is gleaned.

[2] In their petition for review petitioners say: "URLTA was in most respects identical to the legislation ultimately adopted by Oregon." That proposition is an overstatement in view of the fact that at least 13 sections of the model act were deleted (including the uniformity and the "repair and deduct" sections) and several others substantially altered. *See Comment,* footnote 1, *supra.*

abolition of the doctrine of independent covenants, the requirement that the landlord maintain the premises in a habitable condition, as defined, and the provision for specific tenant and landlord remedies.

With the foregoing summary background sketch in mind, we turn to the tenants' remedies provided by the Act. ORS 91.800 carries out the concept that the tenant's covenant to pay rent and the landlord's covenant to provide habitable premises are no longer independent. That section permits, for example, a tenant to require the landlord to remedy any specified "material" noncompliance with the habitability requirements within the statutory period, or the rental agreement shall terminate. It is apparent that the landlord has the option of letting the lease terminate. In addition, if the provisions of ORS 91.800 are invoked by the giving of the required notice, subsection (2) permits the tenant to "recover damages and obtain injunctive relief for *any* noncompliance with the rental agreement or ORS 91.770." (Emphasis supplied.)

While such a remedy may be of less benefit to a month-to-month tenant because he can terminate his tenancy on 30 days' notice in any event, there is nothing in the section which precludes such a tenant from giving the statutory notice and taking advantage of the provisions of subsection (2). If, however, like petitioners here, he wants to remain in possession, he would not want to give the landlord the option of doing nothing and thereby having the rental agreement terminate.

The answer to this dilemma is found in ORS 91.805, which does not give the landlord the option of letting the tenancy terminate but requires him to supply the "essential service" which the tenant, by written notice, has advised the landlord he has failed to provide. If the landlord's failure to do so is deliberate or grossly negligent (and once having been put on notice, his failure would seem *prima facie* "deliberate"), the

tenant has numerous remedies, including: recovery of damages (ORS 91.805(1)(a)); during the period of noncompliance, the right to procure substitute housing, in which case he is excused from paying rent; and in addition the right to recover the cost of the substitute housing, not to exceed an amount equal to the periodic rent. (ORS 91.805(2).)

It is true, as petitioners contend, that "essential services" covered by ORS 91.805, while not anywhere defined in the statute, are probably not as broad as the entire habitability requirements in ORS 91.770; however, we do not agree with petitioners that the phrase must be narrowly construed. We are not called upon to define the phrase in this case because here the tenants expressly disclaimed rights under ORS 91.805 and did not give the notice they concede is required by that section.

■ It is apparent that each question regarding "essential services" will have to be decided as it arises. We note, however, that ORS 91.805(1) and (3) commence with the phrase, "If contrary to the rental agreement or ORS 91.770 * * *," and must assume that the specific reference to ORS 91.770 is intended to indicate that "essential services" are among the habitability requirements set forth in that section.[3] Whether a given ORS 91.770 requirement is an essential service will have to be determined on the facts of each case, bearing in mind the remedial nature of the Act.

■ If the tenant proceeds under ORS 91.805, "he may not proceed under ORS 91.800 as to that breach." ORS 91.805(4). That provision suggests by its reference generally to "ORS 91.800" that the latter was deemed to be all of a piece, encompassing one distinct and interrelated remedial package, available only if the

---

[3]The fact that ORS 91.805(1), as originally enacted (Oregon Laws 1973, ch 559, § 20) specifically referred to "heat, running water, hot water, electricity or other essential service," and the fact that in 1975 (Oregon Laws 1975, ch 256, § 6) the legislature deleted that language and substituted therefor "any essential service" suggests that the present language is intended to be less restrictive.

tenant elects to give the landlord a choice to maintain or terminate the tenancy. ORS 91.800(2) seems to reflect a recognition that a landlord, if he chooses to permit termination, may be compelled by injunction to provide at least "essential services" during the pre-termination period and may be subject to damages for the breach of the agreement or violation of the habitability requirements of ORS 91.770.[4] Our discussion of this point amplifies that in our original opinion, 34 Or App at 237-38.

■ It appears that the legislature has drawn a line, wisely or unwisely, between (a) remedies for a tenant who wants the right to remain in possession where the landlord does not have an option to terminate, and (b) remedies for a tenant who wants to remain in possession only if the premises are brought up to the habitability standards of ORS 91.770, giving the landlord the option of letting the rental agreement terminate, subject to whatever remedies the tenant may have under ORS 91.800(2). In either case, the tenant must give written notice to the landlord advising him of the remedy he is seeking.

■ In spite of this, petitioners would have us hold that a tenant may disregard the specific notice and remedy provisions, remain in possession and, without notice other than a summons and complaint:[5] (1) recover damages (including "mental distress"); (2) obtain an injunction requiring the landlord to bring the premises up to ORS 91.770 standards, and (3) pending the needed repairs, pay a reduced rental. Those remedies substantially exceed those provided by ORS 91.800 and 91.805 combined, and the legislature would have

---

[4] We note that ORS 91.815 provides the tenant the alternative of immediate termination in certain instances, but the election of that remedy carries with it a limitation on recoverable damages.

[5] While the case at bar involves counterclaims, petitioners base those claims under causes of action they claim exist by virtue of ORS 91.800(2), which they contend gives tenants rights independent of ORS 91.800(1) and 91.805.

done a useless thing in enacting them if petitioners' contention were sustained.

Petitioners contend that unless ORS 91.800(2) gives them the remedies they seek, a tenant who wishes to remain in possession has no right to enforce all of the habitability requirements of ORS 91.770. The extent to which that concern may be more theoretical than real will be determined ultimately by judicial interpretation of "essential services" as used in ORS 91.805. In this connection, it is interesting to note that the Uniform Act specifically provided[6] for the right of a tenant to remain in possession and, at the same time, seek damages for failure to comply with the habitability requirememts of the Act, with some limitations. That section was omitted from the Oregon Act, and the omission buttresses our conclusion that those remedies are not available under the Oregon legislation. A tenant who wants the *right* to remain in possession has the remedies provided for in ORS 91.805.

Petition for reconsideration granted; former opinion, as supplemented, adhered to.

---

[6] Section 4.103(a) of the Uniform Residential Landlord and Tenant Act provided as follows:

"(a) If the landlord fails to comply with the rental agreement or Section 2.104 [the counterpart of ORS 91.770], and the reasonable cost of compliance is less than [$100], or an amount equal to [one-half] the periodic rent, whichever amount is greater, the tenant may recover damages for the breach under Section 4.101(b) [the counterpart of ORS 91.800(2)] or may notify the landlord of his intention to correct the condition at the landlord's expense. If the landlord fails to comply within [14] days after being notified by the tenant in writing or as promptly as conditions require in case of emergency, the tenant may cause the work to be done in a workmanlike manner and, after submitting to the landlord an itemized statement, deduct from his rent the actual and reasonable cost or the fair and reasonable value of the work, not exceeding the amount specified in this subsection."