# L & M INVESTMENT CO., *Respondent,*
## *v.*
# MORRISON et ux, *Petitioners.*
## (TC 166-925, CA 8310, SC 25997)
### 594 P2d 1238

Michael H. Marcus, Portland, argued the cause and filed the brief for petitioners. With him on the brief were Greg Bennett, Richard Forester, Gary Roberts, Louis Savage, Michael Schumann, Ralph Smith, Beverly Stein and Legal Aid Service, Portland.

Reuben Lenske, Portland, appearing pro se, and Ivan J. Vesely, Portland, argued the cause for respondent. On the briefs were Reuben Lenske, Portland, appearing pro se, and James Scudder, Portland.

Before Denecke, Chief Justice, and Holman, Tongue, Howell, Lent and Linde, Justices. **

TONGUE, J.

---

**Holman, J., did not participate in this decision.

**TONGUE, J.**

This is an action by a landlord under the Forcible Entry and Detainer statute (ORS 105.105 et seq) to evict a tenant on a month-to-month lease. The tenant filed a counterclaim for damages and an injunction under provisions of the Residential Landlord and Tenant Act of 1973 (ORS 91.700 et seq), alleging, among other things, that the landlord had failed to maintain the premises in a "habitable condition." The trial judge, sitting without a jury, held that plaintiff was not entitled to possession; that defendants were entitled to continue in possession, to damages and attorneys fees and to a mandatory injunction requiring plaintiff to make certain repairs, and that until such repairs were completed the rental would be reduced from $200 per month to $50 per month.

The Court of Appeals reversed on the ground that defendants, the tenants, had failed to give written notice to plaintiff, the landlord, specifying the acts and omissions constituting the breach and that the tenants would terminate the rental agreement unless the breach was remedied, as required by ORS 91.800(1)(a). The court held that, as a result, defendants were not entitled to damages, an injunction or attorney fees and that plaintiff was entitled to possession. 34 Or App 231, 578 P2d 462 (1978); on rehearing 35 Or App 821, 583 P2d 19 (1978). We allowed defendants' petition for review because of our concern whether the written notice required by ORS 91.800(1)(a) must be given before a tenant is entitled to damages or injunctive relief as provided by ORS 91.800(2).[1]

Defendants offered testimony, which was apparently believed by the trial court as the finder of the facts, and which may be briefly summarized as follows:

In November 1976 defendants rented a house in Portland from L&M Investment Co. (L&M), a partnership consisting of William Leveton and Reuben Lenske, under a written lease for a month-to-month tenan-

[1] ORS 91.800 is set forth below in the text of this opinion.

cy at $200 per month. Shortly after moving in, Mrs. Morrison began to complain to L&M by telephone about the condition of the house, particularly a toilet which was leaking contaminated water into the kitchen, among other things.[2] L&M did not respond to her complaints.

Defendants paid the rent for December and January. On February 1, 1977, Mrs. Morrison sent a check to L&M which was dishonored. On February 14th or 15th she reported the leaking toilet to the Multnomah County Sanitation Department. On February 16th that department sent an abatement notice to L&M. On February 18th L&M sent a notice to defendants to pay the February rent within twenty-four hours or an action would be brought for immediate possession of the property.

On March 4, 1978, L&M filed this FED action. Defendants' answer included a counterclaim for damages and an injunction, as provided by ORS 91.800(2), for the landlord's failure to maintain the premises in a "habitable condition" as required by ORS 91.770.

ORS 91.800 provides as follows:

*"Effect of landlord's noncompliance with rental agreement or obligation to maintain premises; generally.*

"(1)(a) Except as provided in ORS 91.700 to 91.895, if there is a material noncompliance by the landlord with the rental agreement or a noncompliance with ORS 91.770, the tenant may deliver a written notice to the landlord specifying the acts and omissions constituting the breach and that the rental agreement will terminate upon a date not less than 30 days after receipt of the notice if the breach is not remedied in seven days in the case of an essential service or 30 days in all other cases, and the rental agreement shall terminate as provided in the notice subject to paragraphs (b) to (d) of this subsection.

---

[2] Other conditions found by the trial court, and which it ordered plaintiff to repair, included violations of the city electrical code, a leaky roof, missing window glass, holes in floors, ceilings and walls, and trash in the basement.

"(b) If the breach is remediable by repairs, the payment of damages or otherwise and if the landlord adequately remedies the breach before the date specified in the notice, the rental agreement shall not terminate by reason of the breach.

"(c) If substantially the same act or omission which constituted a prior noncompliance of which notice was given recurs within six months, the tenant may terminate the rental agreement upon at least 14 days' written notice specifying the breach and the date of termination of the rental agreement.

"(d) The tenant may not terminate for a condition caused by the deliberate or negligent act or omission of the tenant, a member of his family or other person on the premises with his consent.

"(2) Except as provided in ORS 91.700 to 91.895, the tenant may recover damages and obtain injunctive relief for any noncompliance by the landlord with the rental agreement or ORS 91.770.

"(3) The remedy provided in subsection (2) of this section is in addition to any right of the tenant arising under subsection (1) of this section.

"* * * * *"

As previously stated, the trial court held that defendants were entitled to damages and injunctive relief. In reversing the trial court and in holding that a tenant is not entitled to damages or an injunction under ORS 91.800(2) unless he first gives a written "fix or I leave" notice as required by ORS 91.800(1), the Court of Appeals invoked a familiar "rule" of statutory construction that statutes must be read as a whole. It held that such a construction of ORS 91.800 was "compelled" by construing that section together with ORS 91.805, which provides remedies for the failure of landlords to provide "essential services" and provides that as a prerequisite to recovery of damages for the deliberate or grossly negligent failure to provide "essential services" the tenant must first give a "written notice specifying the breach." Upon reading these two sections together, the Court of Appeals concluded that ORS 91.800(2) could not properly be construed "as an independent provision for remedies,"

particularly in view of the further provision of ORS 91.805(4), which precludes relief to a tenant under ORS 91.800 if he proceeds with an action for damages under ORS 91.805(1)(b). (34 Or App at 238. *See also* 35 Or App at 825.)[3]

[3] ORS 91.805 provides as follows:

*"Effect of landlord's deliberate refusal or negligent failure to supply heat, water, electricity or other essential services.*

"(1) If contrary to the rental agreement or ORS 91.770 the landlord deliberately refuses or is grossly negligent in failing to supply any essential service, the tenant may give written notice to the landlord specifying the breach and may:

"(a) Procure reasonable amounts of the essential service during the period of the landlord's noncompliance and deduct their actual and reasonable cost from the rent;

"(b) Recover damages based upon the diminution in the fair rental value of the dwelling unit; or

"(c) Procure reasonable substitute housing during the period of the landlord's noncompliance, in which case the tenant is excused from paying rent for the period of the landlord's noncompliance.

"(2) In addition to the remedy provided in paragraph (c) of subsection (1) of this section the tenant may recover the actual and reasonable cost or fair and reasonable value of the substitute housing not in excess of an amount equal to the periodic rent.

"(3) If contrary to the rental agreement or ORS 91.770 the landlord negligently fails to supply any essential service, the tenant may give written notice to the landlord specifying the breach and may cause the necessary work to be done in a workmanlike manner and, after submitting to the landlord receipts or an agreed upon itemized statement, deduct from his rent the actual and reasonable cost or the fair and reasonable value of the work not exceeding $200:

"(a) The landlord and tenant may agree, at any time, to allow the tenant to exceed the monetary limits of this subsection when making reasonable repairs.

"(b) Notwithstanding paragraph (a) of subsection (5) of this section, in case of emergency, written notice required by this subsection, or attempted oral notice followed by written notice, may be given as promptly as the conditions permit.

"(4) If the tenant proceeds under this section, he may not proceed under ORS 91.800 as to that breach.

"(5) Rights of the tenant under this section do not arise:

"(a) Until he has given reasonable notice under the circumstances to the landlord to enable the landlord to provide the essential service; or

"(b) If the condition was caused by the deliberate or negligent act or omission of the tenant, a member of his family or other person on the premises with his consent.

"(6) The landlord may specify people to do all work under this section as long as the tenant's rights under this section are not diminished."

[402]

The Court of Appeals went on to hold that if it were to accept defendants' contention that they were entitled to damages and an injunction under ORS 91.800(2) (without giving a written "fix or I leave" notice, as required by ORS 91.800(1)), "other sections of the Act relating to damages would be superfluous because ORS 91.800(2) would be all-encompassing with respect to damages for any noncompliance with the rental agreement or with ORS 91.770, requiring the landlord to maintain the premises in a habitable condition" and that "[t]aken as a whole, the Act clearly indicates that such a construction was not intended." (34 Or App at 238)

In a supplemental opinion, the Court of Appeals discussed the problem as it relates to remedies available to a month-to-month tenant, as in this case, and again held that "the answer to this dilemma" is found in ORS 91.805, under which such a tenant has "numerous remedies" for the failure to provide "essential services." (35 Or App at 824-25)

As to whether the term "essential services," as used in ORS 91.805, is as broad as the "habitability" requirements of ORS 91.770, the Court of Appeals recognized that the former is probably "not as broad" as the latter term.[4] The Court of Appeals stated that it

---

[4] ORS 91.770 provides as follows:

*"Landlord to maintain premises in habitable condition; agreement with tenant to maintain premises.*

"(1) A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"(a) Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"(b) Plumbing facilities which conform to applicable law in effect at the time of installation, and maintained in good working order;
"* * * * *

"(e) Electrical lighting with wiring and electrical equipment which conform to applicable law at the time of installation and maintained in good working order;

"(f) Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary

would appear from ORS 91.805 and 91.770 that "'essential services' are among the habitability requirements set forth in [ORS 91.770]"; that "[w]hether a given [habitability] requirement is an essential service will have to be determined on the facts of each case," but that in this case defendants "disclaimed rights under ORS 91.805 and did not give the notice they concede is required by that section." (35 Or App 825)

Finally, the Court of Appeals concluded that the legislature intended to "draw a line" between the remedies of a tenant who wants to remain in possession where the landlord does not have an option to terminate, and a tenant who wants to remain in possession only if the premises are brought up to habability standards, giving the landlord the option to terminate, subject to "whatever remedies the tenant may have under ORS 91.800(2)." The court stated that "[i]n either case the tenant must give written notice to the landlord advising him of the remedy he is asking." (35 Or App at 826)

We recognize the difficulties faced by the Court of Appeals in arriving at a satisfactory solution to the problems presented by this case. We also recognize that the intent of the legislature, as expressed in ORS 91.800, 91.770 and 91.805, is not entirely clear and that some ambiguities and inconsistencies are apparent upon examination of these sections. We cannot, however, agree with the analysis by the Court of Appeals of those provisions of the Residential Landlord and Tenant Act.

---

and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"* * * * *

"(h) Floors, walls, ceilings, stairways and railings maintained in good repair;

"* * * * *

"(j) Safety from the hazards of fire.

"* * * * *"

[404]

The Residential Landlord and Tenant Act (ORS 91.700 et seq) was enacted in 1973 to clarify and restate the rights and obligations of tenants and landlords. Among the most important provisions of the Act is ORS 91.770, which requires landlords to maintain a dwelling within a "habitable condition," as defined in that section of the Act.

■ As we read that Act, it was intended to provide tenants with three separate remedies to enforce the landlord's obligations under the Act, including his obligations under 91.770:

> 1. The tenant may send a written notice to the landlord telling him to fix the problems or consider the rental agreement terminated. ORS 91.800(1).
>
> 2. If the landlord has deliberately refused or has been grossly negligent in failing to provide "essential services," the tenant may, after a written notice to the landlord specifying the breach, either sue for damages based upon diminution in fair rental value or take advantage of various "self-help" remedies, such as securing alternate housing or services or repairing the problem and deducting the cost from the rent. ORS 91.805. Because this remedy is available only if the landlord has failed to provide "essential services" it is not available for all violations of the obligation to provide premises in a "habitable condition," as provided by ORS 91.770.
>
> 3. The tenant may sue the landlord for damages and/or injunctive relief, either in an independent action (ORS 91.800(2)) or as a counterclaim to a landlord's suit for possession. (ORS 91.810)

The Court of Appeals, by requiring that a tenant, in order to avail himself of the remedy provided by ORS 91.800(2), must first give his landlord a written "fix or I leave" notice, as required by ORS 91.800(1), holds, in effect, that ORS 91.800(2) is a subsection of ORS 91.800(1) and that a tenant is precluded from an independent action for damages unless he has first sent such a written notice to his landlord.

That subsections (1) and (2) of ORS 91.800 provide for two separate and independent tenant remedies, contrary to the holding by the Court of Appeals, is made clear by ORS 91.800(3), which provides that "the remedy provided in subsection (2) of this section is in addition to any right of the tenant arising under subsection (1) of this section." No reference is made by the Court of Appeals to this express provision of ORS 91.800(3). Also, ORS 91.800(1) and 91.805 specifically require written notices to the landlord as a prerequisite to the remedies provided by those provisions of the Act, while 91.800(2) omits any such requirement as a prerequisite to the remedies provided by that provision of the Act.

The purpose and structure of the Act lend further support to the conclusion that ORS 91.800(2) was intended to provide a separate and independent remedy for tenants. The interpretation of ORS 91.800(2) by the Court of Appeals would leave available to the tenant only the right to terminate a lease and vacate the premises or take advantage of the more limited remedies available under ORS 91.805 in the event of a failure to provide "essential services."

Many, if not most, residential tenants (the intended beneficiaries of this Act) rent on a month-to-month basis. Thus, because they are free to leave on thirty days' notice, they have no need for the "fix or I leave" remedy, as provided by ORS 91.800(1). For the same reasons, that remedy provides no incentive for a landlord to fulfill his obligation to provide habitable premises to such tenants. As previously noted, the remedies provided by ORS 91.805 are limited to failure to supply "essential services." Moreover, the remedy of damages under that section is available only for "deliberate" or "grossly negligent" failure to provide "essential services" and is apparently limited to damages based upon the diminution in the fair rental value of the dwelling unit. It follows that a

remedy under ORS 91.805 is not available for all "habitability" violations under ORS 91.770.[5]

It also follows, in our opinion, that without the remedy provided by ORS 91.800(2), as a remedy independent of the remedy provided by ORS 91.800(1) and 91.805, one of the intended purposes of the Act, to provide a means to enforce the obligation of landlords to maintain premises in a habitable condition while allowing tenants to remain upon such premises, would be thwarted.

■  In addition, ORS 91.810(1) provides:

> "In an action for possession based upon nonpayment of the rent or in an action for rent when the tenant is in possession, the tenant may counterclaim for any amount, not in excess of the jurisdictional limits of the court in which the action is brought, that he may recover under the rental agreement or ORS 91.700 to 91.895. Unless the parties otherwise agree, the court shall hear and determine all issues within 15 days after the service of the summons and complaint upon the defendant. In the event the tenant counterclaims, the court from time to time may order the tenant to pay into court all or part of the rent accrued and thereafter accruing, and shall determine the amount due to each party. The party to whom a net amount is owed shall be paid first from the money paid into court, and shall be paid the balance by the other party. The court may at any time release money paid into court to either party if the parties agree or if the court finds such party to be entitled to the sum so released. If no rent remains due after application of this section, judgment shall be entered for the tenant in the action for possession."

Thus, a counterclaim for damages under ORS 91.800(2) can be offset against rent due and if the damages exceed the rent, the tenant may remain in possession of the premises.

---

[5] The term "essential services" is not defined in the Act. Some, but not all, of the "habitability" requirements of ORS 91.770 would appear to involve "essential services." We need not decide in this case, however, which of the "habitability" requirements of ORS 91.770 do not involve "essential services" for the purposes of ORS 91.805.

Again, no reference is made by the Court of Appeals to these express provisions of ORS 91.810(1). Instead, under the decision by the Court of Appeals, the tenant would be able to bring a counterclaim only if he had previously served a written notice on the landlord that he intended to leave the premises. As a result, under the opinion by the Court of Appeals, a counterclaim under ORS 91.810 would not enable a tenant to retain possession, as provided by that section of the Act, unless he had the forethought to give a "fix or I leave" notice, and ORS 91.810 would then be meaningless, as a practical matter.

It may be, for reasons stated by the Court of Appeals, that some provisions of the Act are difficult to reconcile under this interpretation of the Act. It may also be, as argued by plaintiffs, that as a matter of equity a tenant should not be permitted in an FED proceeding to complain about defects when the tenant has not previously given written notice of such defects to the landlord and that otherwise landlords would be at an unfair disadvantage in such proceedings.

Based upon our analysis of the provisions of the Act, however, we believe that the legislature, in drafting ORS 91.800(2), did not intend that subsection to require that written "fix or I leave" notice be given as a prerequisite to either an action for damages or injunctive relief under ORS 91.800(2), or a counterclaim under ORS 91.810, as held by the Court of Appeals. We need not decide in this case whether a tenant may prevail in an action or counterclaim under ORS 91.800(2) or 91.810 for failure of a landlord to maintain premises in a "habitable condition" without first giving *any* notice to the landlord of such a breach. In this case there was evidence that the tenants had at least complained by telephone to the landlord about the defective plumbing, a "habitability" requirement under ORS 91.770(1)(b).

For these reasons, we hold that the delivery by the tenant of a written "fix or I leave" notice, as required

for the remedy provided by ORS 91.800(1), is not required in order for a tenant to recover damages or injunctive relief under ORS 91.800(2) for violation of the "habitability" requirements of ORS 91.770. It follows that the decision of the Court of Appeals must be reversed and this case remanded to it for further proceedings.[6]

---

[6] In plaintiff's brief on appeal to the Court of Appeals from the judgment of the trial court, numerous errors were assigned in addition to the contention that the trial court erred "in failing to note the necessity of complaints by tenants to be in writing." Because the Court of Appeals reversed the trial court on that ground alone, it did not consider plaintiff's remaining assignments of error. Because defendants' petition for review was directed to that basis for the decision by the Court of Appeals it did not discuss plaintiff's remaining assignments of error. The primary reason for the granting of that petition for review was our concern that the Court of Appeals had erred in reversing the trial court on that ground. The oral argument on the petition for review was confined primarily to that question. For these reasons, we remand this case to the Court of Appeals for consideration of plaintiff's remaining assignments of error.