No. 28          July 17, 2025          1

IN THE SUPREME COURT OF THE
STATE OF OREGON

Terrial JACKSON,
*Petitioner on Review,*

*v.*

KA-3 ASSOCIATES, LLC,
an Oregon limited liability company,
and Kinsel Ameri Properties, Inc.,
an Oregon corporation, dba WPL Associates,
*Respondents on Review.*

(CC 20CV18057) (CA A180328) (SC S071238)

En Banc

On review from the Court of Appeals.*

Argued and submitted April 23, 2025.

Harry Ainsworth, Portland, argued the cause and filed the reply brief for petitioner on review. Also on the brief were Willard E. Merkel, Merkel and Conner, Portland.

Jacqueline Tokiko Mitchson, Bullivant Houser Bailey PC, Portland, argued the cause and filed the brief for respondents on review. Also on the brief were A. Elizabeth Esfeld, Betts Patterson & Mines, P.S., Portland.

Athul K. Acharya, Public Accountability, Portland, filed the brief for *amici curiae* Oregon Trial Lawyers Association, Oregon Law Center, and Legal Aid Services of Oregon.

Matthew Kirkpatrick, Oregon Consumer Justice Law, P.C., Portland, filed the brief for *amicus curiae* Oregon Consumer Justice.

_____
    * Appeal from Multnomah County Circuit Court, Thomas M. Christ, Judge. 331 Or App 574, 546 P3d 950 (2024).

DUNCAN, J.

The decision of the Court of Appeals is reversed in part, and the case is remanded to the Court of Appeals for further proceedings.

**DUNCAN, J.**

Plaintiff (tenant) brought this personal injury action against defendants (landlord) under the Oregon Residential Landlord and Tenant Act (ORLTA), seeking damages for injuries he suffered when the plastic cover of a light fixture fell onto his head. The light fixture was mounted on the ceiling of a shared, exterior hallway outside tenant's apartment. Tenant's theory was that landlord was liable for his injuries because landlord had breached its obligations under the ORLTA, specifically, its obligations under ORS 90.320(1). That statute requires a landlord to "maintain the dwelling unit in a habitable condition" and provides that "a dwelling unit shall be considered unhabitable if it substantially lacks" certain attributes, which the statute lists.

Landlord moved for summary judgment, asserting, among other things, that a landlord's habitability obligations apply only to the area within a tenant's "dwelling unit" as that term is defined by another provision of the ORLTA, ORS 90.100(14). As relevant here, ORS 90.100(14) provides that "'[d]welling unit' means a structure or the part of a structure that is used as a home." The trial court granted landlord's motion.

Tenant appealed, and the Court of Appeals affirmed. *Jackson v. KA-3 Associates, LLC*, 331 Or App 574, 576, 546 P3d 950 (2024). On tenant's petition, we allowed review. For the reasons explained below, we conclude that a landlord's habitability obligations extend to common areas of an apartment building—like the shared, exterior hallway in this case—that are adjacent to a tenant's apartment and used by the tenant to access the tenant's apartment.

## I.   HISTORICAL AND PROCEDURAL FACTS

The relevant historical facts in this case are few, and we take them from the summary judgment record, viewed in the light most favorable to tenant, the nonmoving party. *See Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004) (describing standard of review for a trial court's ruling on a motion for summary judgment). Tenant rented an apartment from landlord. The apartment was on the first floor of a three-story building, which had a

covered, exterior hallway that led to the entrance of several apartments, including tenant's apartment. While tenant was in the hallway outside his apartment, the plastic cover of a light fixture fell from the ceiling of the hallway and struck him on the head, causing injuries to his head, neck and right shoulder, including herniated cervical discs that required surgery.

Thereafter, tenant brought this personal injury action against landlord, asserting that landlord had breached its habitability obligations under the ORLTA, specifically, its obligations under ORS 90.320(1). *See* ORS 90.360(2) (permitting a tenant to recover damages for a landlord's noncompliance with ORS 90.320).[1] Tenant alleged that "the condition of the *** overhead lighting represented a violation of the habitability standards" set forth in ORS 90.320(1)(e), (f), and (h). Together, those provisions provide:

"(1)  A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(e)  Electrical lighting with wiring and electrical equipment that conform to applicable law at the time of installation and is maintained in good working order;

"(f)  Buildings, grounds and appurtenances at the time of the commencement of the rental agreement in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin; [or]

"* * * * *

"(h)  Floors, walls, ceilings, stairways and railings maintained in good repair[.]"

---

[1] After this case was litigated, the legislature amended the ORLTA, including ORS 90.320(1). However, those amendments did not change ORS 90.320(1) or any other ORLTA statute in any substantive way that is relevant to our analysis. Therefore, all our references to ORS 90.320(1) and the other statutes that are a part of the ORLTA are to the current versions.

ORS 90.320(1)(e), (f), (h). As relevant here, those paragraphs relate to "[e]lectrical lighting," ORS 90.320(1)(e); "[b]uildings, grounds and appurtenances" and "all areas under control of the landlord," ORS 90.320(1)(f); and "ceilings," ORS 90.320(1)(h).

Landlord moved for summary judgment, arguing that there was no genuine issue as to any material fact relating to tenant's ORLTA claim and that it was entitled to prevail as a matter of law. *See* ORCP 47 C (providing that a court shall grant a motion for summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law"). Landlord made two alternative arguments. First, landlord asserted that a landlord's habitability obligations apply only to the area inside a tenant's "dwelling unit," as defined by ORS 90.100(14). Second, landlord asserted that, even if a landlord's habitability obligations extend to areas outside a tenant's dwelling unit, landlord was entitled to summary judgment because no objectively reasonable juror could find that tenant's apartment substantially lacked the attributes that tenant had identified in his complaint. *See id.* (providing that "[n]o genuine issue as to a material fact exists if, based on the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion"). The trial court accepted both of landlord's arguments.[2]

Tenant appealed, and the Court of Appeals affirmed. *Jackson*, 331 Or App at 576. The court resolved the case based on landlord's argument that a landlord's habitability obligations do not apply to areas outside a tenant's dwelling unit. It held:

---

[2] After the trial court granted landlord's motion for summary judgment on tenant's claim under the ORLTA that landlord had violated ORS 90.320(1), tenant filed an amended complaint in which he asserted that landlord was negligent in failing to inspect and maintain the light fixture. Landlord moved for summary judgment on tenant's negligence claim, and the trial court granted that motion. Tenant appealed from the general judgment in which the trial court had granted summary judgment for landlord on both tenant's ORLTA claim and his negligence claim, and the Court of Appeals affirmed each of those rulings. *Jackson*, 331 Or App at 576. Only tenant's ORLTA claim is before us on review.

"Here, [tenant's] injury did not occur in the dwelling unit, and, for that reason, the trial court did not err in granting defendant's motion for summary judgment on [tenant's] claim under the ORLTA."

*Id.* at 578. Given that holding, the court did not need to, and did not, address landlord's alternative argument that, even if a landlord's habitability obligations apply to areas outside a tenant's dwelling unit, no reasonable juror could find that tenant's apartment substantially lacked the attributes that tenant had identified in his complaint.

Thereafter, tenant petitioned this court for review, setting out a single question presented:

"Does a landlord's obligation under ORS 90.320(1) to 'maintain the dwelling unit in a habitable condition' 'at all times' include the common areas of an apartment complex?"

We allowed review to address that statutory construction question. Accordingly, the parties focused their briefing on that question. Indeed, in its brief on the merits, landlord specifically stated that the trial court's ruling on landlord's alternative argument—*viz.*, that no reasonable juror could find that tenant's apartment was substantially lacking any of the attributes identified by tenant in his complaint—was not before this court.

In the following discussion, we address the statutory construction question presented by the Court of Appeals holding, tenant's petition for review, and the parties' briefing in this court: Do a landlord's habitability obligations under ORS 90.320(1) apply only to the area within a tenant's dwelling unit? For the reasons explained below, we conclude that a landlord's habitability obligations apply to areas outside a tenant's dwelling unit—like the shared, exterior hallway in this case—that are adjacent to a tenant's apartment and used by the tenant to access the tenant's apartment, because conditions in those areas can render a dwelling unit unhabitable. Therefore, the trial court erred in granting summary judgment to landlord on tenant's ORLTA claim on that basis, and we reverse and remand this case to the Court of Appeals for further proceedings. On remand, the Court of Appeals can address the trial court's alternative basis for summary judgment, which tenant challenged on

appeal but which the Court of Appeals did not need to, and did not, address.

## II. DISCUSSION

The ORLTA governs the rights and obligations of landlords and tenants of residential properties in Oregon. *L & M Investment Co. v. Morrison*, 286 Or 397, 405, 594 P2d 1238 (1979); *see* ORS 90.115 ("This chapter applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."). This case involves a provision of the ORLTA, ORS 90.320(1), which requires landlords to maintain dwelling units in a habitable condition. The question in this case is whether a landlord's obligations under ORS 90.320(1) extend to an area outside a tenant's apartment, specifically, a shared, exterior hallway that the tenant uses to access the apartment. As mentioned, both the trial court and the Court of Appeals held that a landlord's obligations under ORS 90.320(1) apply only within a tenant's "dwelling unit," as that term is defined by another provision of the ORLTA, ORS 90.100(14). In pertinent part, that statute provides:

> "'Dwelling unit' means a structure or the part of a structure that is used as a home, residence or sleeping place by one person who maintains a household or by two or more persons who maintain a common household."

ORS 90.100(14). Thus, as relevant here, a "dwelling unit" is "a structure or the part of a structure that is used as a home" by a person or persons maintaining a household. ORS 90.100(14). As evidenced by the definition's use of the term "structure," a dwelling unit is, or is part of, "something constructed or built." *Webster's Third New Int'l Dictionary* 2267 (unabridged ed 2002). A dwelling unit includes the interior of a home, as well as constructed exterior areas of the home, as this court recognized in *Humbert v. Sellars*, 300 Or 113, 121, 708 P2d 344 (1985). In that case, we held that a landlord's obligation under the paragraph of ORS 90.320(1) regarding the provision of floors "maintained in good repair" applied to an outdoor patio at the front entrance of an apartment unit. *Id.*

A "dwelling unit" is a part of the "premises," another term defined by a provision of the ORLTA, specifically, ORS 90.100(37), which provides:

"'Premises' means:

"(a)   A dwelling unit and the structure of which it is a part and facilities and appurtenances therein;

"(b)   Grounds, areas and facilities held out for the use of tenants generally or the use of which is promised to the tenant; and

"(c)   A facility for manufactured dwellings or floating homes."

In sum, the plain text of ORS 90.100(14) shows that, as relevant here, a "dwelling unit" is limited to "a structure or the part of a structure that is used as a home." The context of that definition includes the definition of "premises," which shows that a "dwelling unit" can be a part of a larger area; it can be part of a larger structure, ORS 90.100(37)(a), and it can be associated with "[g]rounds, areas and facilities" that are either held out for the use of tenants generally or promised to the tenant, ORS 90.100(37)(b). The question in this case is whether a dwelling unit can be rendered unhabitable under ORS 90.320(1) as a result of conditions of the premises outside the dwelling unit itself. That is a question of statutory construction, requiring us to consider the text, context, and legislative history of ORS 90.320(1). *See State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009) (prescribing method of statutory construction). As we will explain, those sources show that a dwelling unit can be rendered unhabitable based on conditions of the premises outside the dwelling unit itself.

A.   *Text*

We begin with an overview of the text of ORS 90.320(1), before setting out the text itself. ORS 90.320(1) provides that a landlord "shall at all times during the tenancy maintain the dwelling unit in a habitable condition" and that "a dwelling unit shall be considered unhabitable if it substantially lacks" certain attributes, which are set out in a list. Thus, the habitability requirements are stated in the negative. ORS 90.320(1) does not specify what attributes

a dwelling unit must have; instead, it specifies what attributes a dwelling unit must not substantially lack. The habitability requirements relate to basic attributes, including plumbing, heat, electrical lighting, safety, and cleanliness. Of particular relevance here, some of the attributes relate to areas that are, or are likely to be, outside a dwelling unit, including "grounds," ORS 90.320(1)(f), and "elevators," ORS 90.320(1)(i). Although ORS 90.320(1) is long, we set it out in full so that it can be understood as a whole:

"(1)  A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"(a)  Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"(b)  Plumbing facilities that conform to applicable law in effect at the time of installation and are maintained in good working order;

"(c)  A water supply approved under applicable law that is:

"(A)  Under the control of the tenant or landlord and is capable of producing hot and cold running water;

"(B)  Furnished to appropriate fixtures;

"(C)  Connected to a sewage disposal system approved under applicable law; and

"(D)  Maintained so as to provide safe drinking water and to be in good working order to the extent that the system can be controlled by the landlord;

"(d)  Adequate heating facilities that conform to applicable law at the time of installation and are maintained in good working order;

"(e)  Electrical lighting with wiring and electrical equipment that conform to applicable law at the time of installation and is maintained in good working order;

"(f)  Buildings, grounds and appurtenances at the time of the commencement of the rental agreement in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth,

rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"(g)   Except as otherwise provided by local ordinance or by written agreement between the landlord and the tenant, an adequate number of appropriate receptacles for garbage and rubbish in clean condition and good repair at the time of the commencement of the rental agreement, and the landlord shall provide and maintain appropriate serviceable receptacles thereafter and arrange for their removal;

"(h)   Floors, walls, ceilings, stairways and railings maintained in good repair;

"(i)   Ventilating, air conditioning and other facilities and appliances, including elevators, maintained in good repair if supplied or required to be supplied by the landlord;

"(j)   Safety from fire hazards, including a working smoke alarm or smoke detector, with working batteries if solely battery-operated, provided only at the beginning of any new tenancy when the tenant first takes possession of the premises, as provided in ORS 479.270, but not to include the tenant's testing of the smoke alarm or smoke detector as provided in ORS 90.325(1);

"(k)   A carbon monoxide alarm, and the dwelling unit:

"(A)   Contains a carbon monoxide source; or

"(B)   Is located within a structure that contains a carbon monoxide source and the dwelling unit is connected to the room in which the carbon monoxide source is located by a door, ductwork or a ventilation shaft;

"(l)   Working locks for all dwelling entrance doors, and, unless contrary to applicable law, latches for all windows, by which access may be had to that portion of the premises that the tenant is entitled under the rental agreement to occupy to the exclusion of others and keys for those locks that require keys; or

"(m)   For a dwelling unit in a building where building permits for its construction were issued on or after April 1, 2024, adequate cooling facilities that:

"(A)   Provide cooling in at least one room of the dwelling unit, not including a bathroom;

"(B)   Conform to applicable law at the time of installation and are maintained in good working order; and

"(C)   May include central air conditioning, an air-source or ground-source heat pump or a portable air conditioning device that is provided by the landlord."

The first sentence of ORS 90.320(1) states that "[a] landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition." Read in isolation, that first sentence could be understood to mean that a landlord's habitability obligations apply only to the structure that constitutes the "dwelling unit," that is, the "structure or the part of a structure that is used as a home." ORS 90.100(14). But ORS 90.320(1) does not end after that first sentence, and that sentence must be construed in context. Immediately after stating that a landlord must "maintain the dwelling unit in a habitable condition," ORS 90.320(1) goes on to state that "a dwelling unit shall be considered unhabitable if it substantially lacks" any one of a long list of attributes.

As mentioned, some of the attributes listed in ORS 90.320(1) relate to areas that are, or are likely to be, outside the area that constitutes an individual tenant's dwelling unit but inside the premises of which that dwelling unit is a part. For example, ORS 90.320(1)(f) provides:

"(1)   *** For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(f)   Buildings, grounds and appurtenances at the time of the commencement of the rental agreement in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part safe for normal and reasonably foreseeable uses, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin[.]"

As is evident from its plain text (and the repetition it contains), ORS 90.320(1)(f) establishes two different obligations that apply at different times. The first part of ORS 90.320 (1)(f) establishes the first obligation, which relates to "the time of the commencement of the rental agreement." Under the first part of the paragraph, a dwelling unit shall be considered unhabitable if, at the time of the commencement of the rental agreement, its "[b]uildings, grounds and appurtenances" "substantially lack" certain safety or cleanliness attributes. Specifically, the dwelling unit shall be considered unhabitable if it substantially lacks either the attribute of being "safe for normal and reasonably foreseeable uses" or the attribute of being "clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin."

The second part of ORS 90.320(1)(f) establishes the second obligation, which is a continuing obligation that applies to "all areas under control of the landlord." It provides that a dwelling unit shall be considered unhabitable if those areas "substantially lack" safety or cleanliness, under the same standards that apply to the first obligation. Consequently, a landlord has a continuing duty to ensure that all areas under its control do not substantially lack either the attribute of being "safe for normal and reasonably foreseeable uses" or the attribute of being "clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin."

The plain text of ORS 90.320(1)(f) indicates that a landlord's habitability obligations apply to areas of a premises that are outside a tenant's dwelling unit. That is because it expressly refers to such areas, including "grounds" and "all areas under control of the landlord." *See* ORS 90.100(37) (defining "premises" to include "[a] dwelling unit" *and* other areas, including "[g]rounds, areas and facilities held out for the use of tenants generally or the use of which is promised to the tenant"). If a landlord's habitability obligations applied only to the area inside a tenant's dwelling unit, then the legislature would not have imposed safety and cleanliness obligations relating to areas outside a tenant's dwelling unit, like grounds and common areas. Nor would it have imposed a continuing obligation on landlords that applies

to "all areas under control of the landlord" because, after a tenant has taken possession of a dwelling unit, the areas under a landlord's control are going to be primarily (and perhaps exclusively) outside the dwelling unit. Thus, the nature of the obligation under ORS 90.320(1)(f) indicates that a landlord's habitability obligations are not limited to the area inside a tenant's dwelling unit.

The view that a landlord's habitability obligations apply to areas outside a tenant's dwelling unit is bolstered by other provisions of ORS 90.320(1) that relate to attributes that can, and often do, involve areas outside a dwelling unit. For example, ORS 90.320(1)(i) relates to facilities, including elevators. It provides that a dwelling unit shall be considered unhabitable if it substantially lacks

> "[v]entilating, air conditioning and other facilities and appliances, including elevators, maintained in good repair if supplied or required to be supplied by the landlord."

ORS 90.320(1)(i). Although it is possible that the legislature intended to require that an elevator be in good repair only if it were within a tenant's dwelling unit, it seems unlikely that the legislature intended to establish an elevator-related habitability requirement to protect tenants with personal elevators, but not those with shared elevators. Similarly, it seems unlikely that the legislature intended the requirement set out in ORS 90.320(1)(j), which relates to "[s]afety from fire hazards," to apply only within a dwelling unit and not to, for example, a shared hallway leading to the dwelling unit.

In sum, the text of ORS 90.320(1) indicates that the requirement that a landlord "maintain the dwelling unit in a habitable condition" imposes obligations relating to areas outside the dwelling unit itself because it provides that a dwelling unit shall be considered unhabitable if it lacks certain attributes, including attributes relating to areas that are, or are likely to be, outside the dwelling unit, like grounds, common areas, and elevators.

B.  *Legislative History*

The legislative history of ORS 90.320(1) confirms the view that a landlord's habitability obligations extend to areas outside a tenant's dwelling unit. As we will explain,

the statute establishing a landlord's habitability obliga-
tions, which is now codified as ORS 90.320(1), was enacted
as part of the bill that created the ORLTA, Senate Bill (SB)
159 (1973). Or Laws 1973, ch 559. And it was intended to
impose on landlords "duties of repair and maintenance of *the
dwelling unit and the premises*." Explanation of Engrossed
SB 159, House Committee on Local Government and Urban
Affairs, SB 159 (undated) (emphasis added).

The ORLTA was modeled on the Uniform Residential
Landlord and Tenant Act (1972) (URLTA). *Eddy v. Anderson*,
366 Or 176, 186, 458 P3d 678 (2020). As introduced, the sec-
tion of SB 159 that became *former* ORS 91.770(1) (1973),
the predecessor to ORS 90.320(1), mirrored URLTA section
2.104. It provided:

"(1)   A landlord shall:

"(a)   Comply with the requirements of applicable build-
ing and housing codes materially affecting health and
safety;

"(b)   Make all repairs and do whatever is necessary to
put and *keep the premises in a fit and habitable condition*;

"(c)   *Keep all common areas of the premises in a clean
and safe condition*;

"(d)   Maintain in good and safe working order and con-
dition all electrical, plumbing, sanitary, heating, ventilat-
ing, air conditioning and other facilities and appliances,
including elevators, supplied or required to be supplied by
him;

"(e)   Provide and maintain appropriate receptacles and
conveniences for the removal of ashes, garbage, rubbish
and other waste incidental to the occupancy of the dwelling
unit and arrange for their removal; and

"(f)   Supply running water and reasonable amounts of
hot water at all times and reasonable heat between October
1 and May 1 except where the building that includes the
dwelling unit is not required by law to be equipped for that
purpose, or the dwelling unit is so constructed that heat or
hot water is generated by an installation within the exclu-
sive control of the tenant and supplied by a direct public
utility connection."

SB 159 § 21(1) (1973), introduced (Jan 25, 1973) (emphases added). Thus, as initially proposed, the habitability provision expressly imposed obligations on landlords with respect to areas outside the dwelling unit, including common areas; it required landlords to "keep *the premises* in a fit and habitable condition," and to "[k]eep all *common areas of the premises* in a clean and safe condition." *Id*. § 21(1)(b), (c) (emphases added).

During the 1973 session, landlord advocates expressed concerns that the obligations imposed on landlords under the habitability provision as introduced were both overbroad and vague. *See, e.g.*, Exhibit 1, Senate Committee on Local Government and Urban Affairs, SB 159, Feb 27, 1973 (statement of Melvyn C. Friendly) (stating that "terms such as * * * 'fit and habitable condition' (Sec 21(1)(b)), 'clean and safe condition,' (Sec 21(1)(c)), [and] 'good and safe working order and condition' (Sec 21(1)(d)) * * * are all terms which are not defined in even a general manner"); Exhibit 5, Senate Committee on Local Government and Urban Affairs, SB 159, Feb 27, 1973 (statement of Vince Milligan) (stating that the obligation regarding compliance with building and housing codes under Section 21(1)(a) "will probably cause the most arguments and litigation of the entire act" because "[t]here are hundreds of requirements in building and housing codes," and "[w]hich ones *materially* affect health and safety is highly debatable" (emphasis in original)).

In response to those concerns, the legislature amended the habitability provision to replace the text mirroring the URLTA with text found in the statute today, which it drew from a different landlord-tenant bill at the 1973 session, House Bill (HB) 2424 (1973):

"(1)  A landlord shall at all times during the tenancy maintain the dwelling unit in a habitable condition. For purposes of this section, a dwelling unit shall be considered unhabitable if it substantially lacks:

"(a)  Effective waterproofing and weather protection of roof and exterior walls, including windows and doors;

"(b)  Plumbing facilities which conform to applicable law in effect at the time of installation, and maintained in good working order;

"(c)   A water supply approved under applicable law, which is:

"(A)   Under the control of the tenant or landlord and is capable of producing hot and cold running water;

"(B)   Furnished to appropriate fixtures; and

"(C)   Connected to a sewage disposal system approved under applicable law and maintained in good working order to the extent that the system can be controlled by the landlord;

"(d)   Adequate heating facilities which conform to applicable law at the time of installation and maintained in good working order;

"(e)   Electrical lighting with wiring and electrical equipment which conform to applicable law at the time of installation and maintained in good working order;

"(f)   Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin;

"(g)   An adequate number of appropriate receptacles for garbage and rubbish in clean condition and good repair at the time of the commencement of the lease or rental agreement, and the landlord shall provide and maintain appropriate serviceable receptacle thereafter and arrange for their removal unless the parties by written agreement provide otherwise;

"(h)   Floors, walls, ceilings, stairways and railings maintained in good repair;

"(i)   Ventilating, air conditioning and other facilities and appliances, including elevators, maintained in good repair if supplied or required to be supplied by the landlord; or

"(j)   Safety from the hazards of fire."

SB 159 § 14(1) (1973), enrolled (July 11, 1973). The legislature intended those amendments to add specificity and clarity regarding the scope of a landlord's habitability obligations.

A memorandum to legislators prepared by legislative staff and counsel explained that the amendments "[a]dopted specific landlord duties (based on HB 2424) to replace the vague term 'fit and habitable'" and

> "seem to clear up many of the vague provisions contained in the original SB 159. For example, a landlord need not fear a vaguely worded 'implied warranty of habitability' which can be imposed by a court. * * *
>
> "The amendments provide a more definite and certain standard for both the landlord and the tenant."

Exhibit 2, Senate Committee on Local Government and Urban Affairs, SB 159, Mar 20, 1973 (memorandum to Sen Keith Burns, Committee Chairman). Similarly, a summary of the ORLTA explained that, upon the amendment, the habitability provision of SB 159

> "establishes the minimum duties of the landlord under a rental agreement. The original language contained in SB 159 and the Uniform Act required landlord compliance with local codes. Landlords violently objected to this obligation, so this section was amended to adopt the landlords' obligations from HB 2424. These are drawn primarily from California law and provide a good basic minimum but not as stringent as compliance with local codes.
>
> "The rational [*sic*] of this section set forth by the National Conference of Commissioners on Uniform State Laws is as follows:
>
> "'Vital interests of the parties and public under modern urban conditions require the proper maintenance and operation of housing. It is thus necessary that minimum duties of landlords and tenants be set forth. *Generally duties of repair and maintenance of the dwelling unit and the premises are imposed upon the landlords by this section.* Major repairs, even access, to essential systems outside the dwelling unit are beyond the capacity of the tenant. Conversely, duties of cleanliness and proper use within the dwelling unit are appropriately fixed upon the tenant[.]'"

Explanation of Engrossed SB 159, House Committee on Local Government and Urban Affairs, SB 159 (undated) (emphasis added).

The summary went on to state that the section "follows the warranty of habitability doctrine now recognized" in a list of states, with citations to cases from those jurisdictions. *Id*. The cited cases include cases in which courts recognized that a landlord's obligations under the warranty of habitability could extend to common areas. For example, in *Hinson v. Delis*, 26 Cal App 3d 62, 102 Cal Rptr 661 (1972), *disapproved of on other grounds by Knight v. Hallsthammar*, 29 Cal 3d 46, 623 P2d 268 (1981), the California Court of Appeal held that an implied warranty of habitability entitled a tenant to withhold rent and that, when determining how much rent the tenant could withhold, a court must consider the materiality of the breach, and that, to be material, the landlord's violation had to "be relevant and affect the tenant's apartment or the common areas which he uses." *Id*. at 70; *see also id*. (citing *McNally v. Ward*, 192 Cal App 2d 871, 14 Cal Rptr 260 (1961) (observing that a landlord has a common law duty to maintain a "common area")). Similarly, in *Javins v. First National Realty Corporation*, 428 F2d 1071 (DC Cir), *cert den*, 400 US 925 (1970), the United States Court of Appeals for the District of Columbia held that a landlord's implied duty of habitability entitled a tenant to withhold rent and that, in order for evidence of violations of that duty to be relevant to the determination of the amount of rent due, "the violations must affect the tenant's apartment or common areas which the tenant uses." *Id*. at 1082 n 62.

In sum, as introduced in 1973, the habitability provision was based on the URLTA and expressly covered common areas. SB 159 § 21(1) (1973), introduced (Jan 25, 1973). But, in response to landlords' concerns that the URLTA provision was not specific and clear enough, the legislature replaced the text taken from the URLTA with text from another landlord-tenant bill at the 1973 legislative session. SB 159 § 14(1) (1973), enrolled (July 11, 1973). The legislative history of that amendment shows that the legislature intended the habitability provision to impose "duties of repair and maintenance of *the dwelling unit and the premises*." Explanation of Engrossed SB 159, House Committee on Local Government and Urban Affairs, SB 159 (undated) (emphasis added). It also shows that the legislature intended

for those obligations to be consistent with the implied warranty of habitability established by case law in other jurisdictions, which applied to common areas.

The view that a landlord's habitability obligations apply to areas outside a tenant's dwelling unit is further confirmed by this court's decision in *Bellikka v. Green*, 306 Or 630, 636, 762 P2d 997 (1988) and an amendment of ORS 90.320(1) that followed that decision. In *Bellikka*, the plaintiff fell into a partially concealed hole in the tenant's lawn while walking to the tenant's front door. *Id*. at 632. The plaintiff brought a personal injury action against the tenant's landlord, alleging that the landlord had violated its obligation under an earlier version of ORS 90.320 (1)(f) related to "grounds." *Id*. at 634. This court understood that obligation to apply to areas outside a tenant's dwelling unit. *Id*. at 636. But, at the time, the then-existing version of ORS 90.320(1)(f) related only to cleanliness, not safety; it provided:

"(1)   * * * [A] dwelling unit shall be considered unhabitable if it substantially lacks:

"* * * * *

"(f)   Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin[.]"

*Former* ORS 91.770(1)(f) (1987), *renumbered as* ORS 90.320 (1)(f) (1989). Therefore, this court held that the landlord had not violated its habitability obligations as to the grounds. *Bellikka*, 306 Or at 634-36.

The following year, through the passage of Senate Bill (SB) 602 (1989), the legislature amended ORS 90.320(1)(f) to include the safety obligation that exists today. Or Laws 1989, ch 506, § 8. Upon that amendment, the provision provided that "a dwelling unit shall be considered unhabitable if it substantially lacks:

> "(f)   Building, grounds and appurtenances at the time of the commencement of the rental agreement in every part *safe for normal and reasonably foreseeable uses*, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin, and all areas under control of the landlord kept in every part *safe for normal and reasonably foreseeable uses*, clean, sanitary and free from all accumulations of debris, filth, rubbish, garbage, rodents and vermin[.]"

ORS 90.320(1)(f) (1989) (emphases added); *see* Exhibit K, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, SB 602, May 15, 1989 (accompanying statement of Michael H. Marcus) (explaining that the purpose of the amendment to *former* ORS 91.770(1) (1987) "is to answer the interpretation of *Bellikka* * * * that ORLTA does not cover a situation in which someone falls into a concealed hole in a tenant's front yard").

Notably, the legislative history of that amendment indicates that the 1989 legislature understood ORS 90.320 (1)(f), both before and after the amendment, to impose obligations on a landlord with respect to areas outside the dwelling unit, including common areas. The spokesperson for the Coalition for Affordable Housing, the workgroup that drafted SB 602, explained to the legislature that what the amendment

> "requires is that when the tenant takes over the premises, at the beginning of the tenancy, that the premises be safe for normal and reasonably foreseeable uses. In *Bellikka*, it was a visit by [the plaintiff], coming across the front lawn. Once the tenant takes control, the only thing the landlord has continued responsibility for is the parts of the premises which are under the control of the landlord. *So if you have a multifamily complex, and a common ground which the landlord maintains, the landlord can't dig up holes for irrigation systems, not properly sign them or fence them, and expect to be free of liability if guests or children or tenants trip and fall in the holes.* But it doesn't make the landlord responsible, for example, for a single family yard which the, where the tenant digs up, buries garbage, whatever tenants might do in a yard."

Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, SB 602, May 15,

1989, Tape 98, Side B (statement of Michael H. Marcus) (emphasis added). Therefore, the 1989 legislature understood a landlord's continuing obligation under paragraph (1)(f)—relating to "all areas" over which the landlord retains control during the tenancy—to extend to areas outside the dwelling unit, including to "a common ground" of "a multi-family complex."[3]

In sum, the legislative history of ORS 90.320(1) shows that, when the statute was first enacted in 1973, it was intended to impose "duties of repair and maintenance of *the dwelling unit and the premises*." Explanation of Engrossed SB 159, House Committee on Local Government and Urban Affairs, SB 159 (undated) (emphasis added). It was also intended to be consistent with case law from other jurisdictions relating to the common-law warranty of habitability, which applied to common areas of apartment buildings. *Id*. In keeping with that intent, in *Bellikka*, this court recognized that, under ORS 90.320(1)(f), a landlord's obligations can extend beyond a structure to a yard. 306 Or at 636. And, when, in the wake of *Bellikka*, the legislature amended ORS 90.320(1)(f) to impose safety-related obligations, it intended those obligations to apply to "common ground which the landlord maintains." Tape Recording, House Committee on Judiciary, Subcommittee on Civil Law and Judicial Administration, SB 602, May 15, 1989, Tape 98, Side B (statement of Michael H. Marcus).

C.  *Conclusion and Application*

Based on the text and legislative history of ORS 90.320(1), we conclude that conditions outside a tenant's dwelling unit can render the dwelling unit unhabitable. The plain text shows that the legislature intended to impose obligations on landlords relating to areas that are, or are likely to be, outside a tenant's dwelling unit, specifically, "[b]uildings, grounds and appurtenances," "all areas under control of the landlord," and elevators. The legislative history shows that the statute was intended to impose obligations

---

[3] After 1989, there were additional amendments to ORS 90.320(1), including an amendment to ORS 90.320(1)(f) to change "[b]uilding" to "[b]uildings." Or Laws 1999, ch 676, § 11. However, none of those amendments are relevant to our analysis of the statute or the question presented in this case.

on landlords relating to both dwelling units and the premises of which the dwelling units are a part. Therefore, we conclude that the Court of Appeals erred in holding that ORS 90.320(1) does not apply to areas outside a tenant's dwelling unit, like the shared, exterior hallway that was adjacent to tenant's apartment and used by tenant to access the apartment.

The decision of the Court of Appeals is reversed in part, and the case is remanded to the Court of Appeals for further proceedings.[4]

---

[4] As we mentioned, landlord made two arguments in the trial court: (1) ORS 90.320(1) does not apply to areas outside a tenant's dwelling unit, and, (2) even if it does, no reasonable juror could conclude that tenant's apartment substantially lacked the attributes tenant had identified in his complaint. The trial court agreed with both arguments, and tenant appealed. On appeal, the Court of Appeals agreed with landlord's primary argument and, therefore, did not address his alternative argument. Tenant challenged the Court of Appeals decision in his petition for review, raising only the issue of whether ORS 90.320(1) applies to areas outside a tenant's dwelling unit, and we allowed review to address that issue. Given the foci of the Court of Appeals' decision, tenant's petition for review, and the parties' briefing in this court, we decline to address landlord's alternative argument.